675 S.E.2d 854

**Eric Amir GHAMESHLOUY, s/k/a Eric Amir Ghamesouly**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1882–07–1.**

Court of Appeals of Virginia,
Chesapeake.

May 5, 2009.

Justin W. Esworthy, Assistant Public Defender (Office of the Public Defender, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Robert F. McDonnell, Attorney General; Harvey L. Bryant, Commonwealth's Attorney; Thomas M. Murphy, Deputy Commonwealth's Attorney, on brief), for appellee.

Present: McCLANAHAN, HALEY and PETTY, JJ.

McCLANAHAN, Judge.

Eric Amir Ghameshlouy was convicted of a misdemeanor in violation of City of Virginia Beach Code § 23–7.1. On appeal, appellant seeks to challenge the trial court's interpretation and application of this local ordinance. Appellant, however, did not perfect an appeal of the misdemeanor conviction. He perfected an appeal only as to a state law felony conviction arising out of the same incident. We, therefore, conclude that this Court has no jurisdiction to hear an appeal on the misdemeanor conviction, and dismiss the appeal.

## I.

The City of Virginia Beach charged appellant with a misdemeanor violation of City of Virginia Beach Code § 23–7.1 (failure to provide correct identification to a police officer), as set forth in appellant's arrest warrant, entitled "Warrant of Arrest—Misdemeanor (Local)." At the same time, the Commonwealth charged appellant with three related offenses under state law (possession of cocaine (Code § 18.2–250); assault

on a law enforcement officer (Code § 18.2–57(C)); and probation violation (Code § 19.2–306)). All three of these state law offenses were adjudicated pursuant to a plea agreement, dated July 24, 2007, which was executed by appellant and the parties' counsel. A sentencing order on these three offenses was then entered on August 1, 2007.[1] While the plea agreement did not indicate it was conditional, appellant and the Commonwealth have stipulated that the plea agreement was, in fact, conditional as to appellant's guilty plea on the cocaine possession charge.

On July 31, 2007, appellant filed a notice of appeal with the clerk's office of the circuit court. In the notice, appellant listed the circuit court case numbers assigned to each of the three state law offenses and the local misdemeanor offense. However, appellant did not identify the City of Virginia Beach as a party to the appeal. Rather, appellant named only the Commonwealth of Virginia as the prosecuting authority, as set forth in the style of the case. Appellant also named only the Commonwealth of Virginia as the appellee in his certificate to the notice of appeal (see Rule 5A:6(d)). Furthermore, appellant stated in the notice of appeal that he "hereby gives notice of his intention to appeal from a final judgment of the Circuit Court of the City of Virginia Beach, rendered ... on July 24 2007." We find no order in the record dated July 24, 2007. July 24, 2007 is, instead, the date of appellant's plea agreement on the three state law offenses, pursuant to which the

---

1. Neither the July 24, 2007 plea agreement nor the August 1, 2007 sentencing order addressed appellant's misdemeanor charge. The plea agreement, in fact, originally included terms addressing the misdemeanor charge, but those terms were deleted by hand and initialed by counsel on the version of the agreement that was executed.

Unlike the three state offenses, appellant was convicted of the local misdemeanor offense in a bench trial. A sentencing order for this conviction was entered on July 30, 2007, and recites the "City" as the prosecuting authority in the style of the case. This order of conviction names "T. Murphy" as the "Attorney for the Commonwealth," and does not name counsel for the City of Virginia Beach. It is undisputed, however, that the Office of the Commonwealth's Attorney for the City of Virginia Beach conducted appellant's prosecution for both the local misdemeanor charge and the charges under state law.

circuit court entered the August 1, 2007 sentencing order, separate and apart from the July 30, 2007 sentencing order on appellant's local misdemeanor conviction.

Appellant then petitioned this Court seeking a review of issues involving the state law felony conviction for cocaine possession (question presented number 1) and the local misdemeanor conviction (question presented number 2). A judge of this Court denied the petition challenging the state law conviction, pursuant to Code § 17.1–407(C) (procedure for one-judge review in a criminal case), after determining there was no merit in appellant's argument that the trial court erred in denying his motion to suppress.

## II.

We now dismiss that part of appellant's appeal challenging his local misdemeanor conviction due to his failure to perfect an appeal as to that conviction. For such an appeal, appellant was required to name the City of Virginia Beach in the notice of appeal because the City, as the prosecuting authority on the local misdemeanor charge, was an indispensable party. *Woody v. Commonwealth,* 53 Va.App. 188, 196–200, 670 S.E.2d 39, 43–45 (2008) (holding that Amherst County was an indispensable party in an appeal challenging convictions under both state law and the Amherst County Code, thus requiring that the County be named as a party in appellant's notice of appeal in order to perfect an appeal on the local law conviction).[2] Appellant, however, did not name the City of Virginia Beach as a party in either the notice of appeal or the accompanying certificate of service—naming only the Commonwealth of Virginia. "[T]he failure to join an indispensable party is a jurisdictional defect that requires dismissal of the appeal." *Id.* at 199, 670 S.E.2d at 45 (dismissing on jurisdictional grounds an appeal of a conviction under local law because appellant did not name the local authority in his

---

2. As in *Woody,* the instant case involved "simultaneous prosecutions— [those] on behalf of the Commonwealth ... and one on behalf of the [City of Virginia Beach]." *Woody,* 53 Va.App. at 198, 670 S.E.2d at 44.

notice of appeal) (citing *Asch v. Friends of the Community of Mount Vernon Yacht Club*, 251 Va. 89, 91, 465 S.E.2d 817, 818–19 (1996))[3]; *see Roberson v. City of Virginia Beach*, 53 Va.App. 666, 674 S.E.2d 569 (2009) (holding that the City of Virginia Beach was an indispensable party in an appeal challenging a conviction under the City of Virginia Beach Municipal Code, thus requiring that the City be named as a party in appellant's notice of appeal in order to perfect an appeal on the local law conviction); *Watkins v. Fairfax County Dep't of Family Servs.*, 42 Va.App. 760, 766, 595 S.E.2d 19, 22 (2004) ("[A]n indispensable party must be named in the notice of appeal in order to properly perfect the appeal.").

Appellant thus failed to file a timely notice of appeal of his local misdemeanor conviction as required under Rule 5A:6(a). That is to say, as to the misdemeanor conviction, a notice of appeal was not filed within 30 days of the final order entered upon the conviction; and the notice of appeal that appellant did file was " ' "ineffective" and the appeal [was] never properly perfected' " as to that conviction. *Woody*, 53 Va.App. at 195, 670 S.E.2d at 43 (quoting *Watkins*, 42 Va.App. at 774, 595 S.E.2d at 26); *see Vaughn v. Vaughn*, 215 Va. 328, 329–30, 210 S.E.2d 140, 141–42 (1974) (holding that "appeal was not perfected according to law," and was therefore "dismissed as improvidently awarded," where notice of appeal named as

---

3. In *Asch*, the Virginia Supreme Court rejected both actual notice and estoppel as grounds for overcoming the jurisdictional defect of failing to name an indispensable party in the notice of appeal, explaining as follows:

> We reject the respondents' contention that the Yacht Club should be treated as a party to this appeal because it had notice of the appeal. The mere fact that an indispensable party who was a litigant in the trial court has notice that an appeal has been perfected against another litigant is not sufficient to confer this Court's jurisdiction over the indispensable party against whom no appeal has been properly perfected.
> We also find no merit in the respondents' contention that the Yacht Club is estopped from denying it is a party to this appeal. In this instance, this Court will not permit the respondents to utilize estoppel principles in an attempt to create appellate jurisdiction over an indispensable party which is not properly before the Court.

*Asch*, 251 Va. at 93, 465 S.E.2d at 819.

appellee "Carolyn F. Vaughn, Administratrix of the Estate of Donald W. Vaughn, Jr.," rather than naming "Carolyn F. Vaughn" in her individual capacity). In short, no notice of appeal was filed as to the misdemeanor conviction.[4] Accordingly, this Court is without jurisdiction to review appellant's misdemeanor conviction. *Woody*, 53 Va.App. at 195, 670 S.E.2d at 43 (Rule 5A:6(a) requirement is "mandatory" and "jurisdictional" (citations and internal quotation marks omitted)); *Watkins*, 42 Va.App. at 774, 595 S.E.2d at 26 ("[T]he failure to file a notice of appeal . . . within the requisite 30-day period . . . necessarily affects this Court's authority to exercise [its] jurisdiction" over the subject matter of the appeal.); *Zion Church Designers and Builders v. McDonald*, 18 Va. App. 580, 583, 445 S.E.2d 704, 706 (1994) ("The time requirements for filing are mandatory, and failure of the appellant to file the notice of appeal timely requires dismissal of the appeal.").

---

4. In addition to naming only the Commonwealth of Virginia as the prosecuting authority below and the appellee in his appeal, appellant also referenced in his notice of appeal only his plea agreement, which was limited to disposition of his state law charges, as the "final judgment" from which he was appealing. Appellant specifically stated that July 24, 2007 was the date of the "final judgment" from which he was appealing. July 24, 2007 was actually the date of appellant's plea agreement on the state law charges. That reference, along with naming only the Commonwealth of Virginia as appellee, gave further explicit indication that appellant was not appealing his local misdemeanor conviction. In fact, as of July 24, 2007, appellant had not yet been tried on the local misdemeanor offense. Appellant was tried on the misdemeanor offense on July 30, 2007.

We note, in this regard, that this case is clearly distinguishable from *Carlton v. Paxton*, 14 Va.App. 105, 109–11, 415 S.E.2d 600, 602–03 (1992), where this Court rejected appellees' challenge to the appellant's notice of appeal. Unlike this case, in *Carlton*, there were no consolidated cases below, the validity of an order of adoption was the only matter at issue, appellant named the correct adverse party in his notice of appeal, but in the notice appellant incorrectly identified the final order being appealed. *Id.* Further, appellees acknowledged "that there was never any question as to which order was being appealed." *Id.* at 110 n. 2, 415 S.E.2d at 603 n. 2. On those facts, we held that dismissal of the appeal was not warranted "[b]ecause appellant did in fact file a notice of appeal" in the case, and "the purpose of Rule 5A:6 was met." *Id.* at 111, 415 S.E.2d at 603.

**54** 

 Furthermore, this jurisdictional defect was not waived, as appellant contends, as a result of the Commonwealth moving this Court to amend the caption of the case by adding the City of Virginia Beach as an appellee, and the City of Virginia Beach later purportedly joining in the Commonwealth's brief, addressing the merits of the misdemeanor conviction.[5] First, such an amendment "presupposes a valid instrument as its object." *Wellmore Coal Corp. v. Harman Mining Corp.,* 264 Va. 279, 283, 568 S.E.2d 671, 673 (2002). Because appellant did not file a notice of appeal as to the misdemeanor conviction, "there was nothing to amend." [6] *Id.* Second, it is axiomatic that the Commonwealth could not effect a waiver of the jurisdictional defect as to some other party, i.e., the City of Virginia Beach, by the Commonwealth filing a motion requesting that such party be added as an appellee to the pending appeal. Third, it is also self-evident that the City of Virginia Beach could not "join" in an appeal that did not exist.[7]

---

5. The Commonwealth indicated in its motion that "it should remain involved" in this appeal because of the potential for appellant to appeal to the Virginia Supreme Court this Court's disposition of his appeal on the state law offenses. The Commonwealth then moved this Court to dismiss this appeal as to the local misdemeanor conviction because of appellant's failure to name the City of Virginia Beach, an indispensable party, in appellant's notice of appeal.

6. In advocating appellant's position, the dissent, like appellant, proceeds upon the erroneous premise that appellant filed a notice of appeal as to his misdemeanor conviction, but simply did so in a defective manner. That defect, the dissent then asserts, was later waived by the City of Virginia Beach when "the brief responding to the merits of [appellant's] argument was signed and filed jointly by an Assistant Attorney General and by Thomas M. Murphy, Deputy Commonwealth's Attorney for the City of Virginia Beach." Once again, because there was no appeal of appellant's misdemeanor conviction, any action purportedly taken on behalf of the City of Virginia Beach in the *pending appeal on appellant's state law conviction* would have been a nullity vis-à-vis the misdemeanor conviction.

7. We thus need not decide whether the jurisdictional defect presented in this case would have otherwise implicated waivable personal jurisdiction, *see Board of Supervisors of Fairfax County v. Board of Zoning Appeals of Fairfax County,* 271 Va. 336, 347–48, 626 S.E.2d 374, 381 (2006) (holding 30–day filing requirement for appeal of Board of

■ We also find no authority for a third party to unilaterally participate in a pending appeal in this Court or the Virginia Supreme Court, other than the authority of the United States and the Commonwealth to file a brief amicus curiae without the consent of the Court or counsel. *See* Rules 5:30 and 5A:23. For a third party to be recognized as a party to a pending appeal, such party must obtain the Court's approval upon the party's motion to intervene. *See Bagwell v. International Union*, 244 Va. 463, 473–74, 423 S.E.2d 349, 355 (1992), *rev'd on other grounds*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (addressing for the first time "whether a party may intervene in the first instance on [an] appeal" to this Court). The City of Virginia Beach filed no such motion in this appeal.[8]

---

Zoning Appeals decision to circuit court did not implicate circuit court's subject-matter jurisdiction, and was, therefore, waivable), or, on the other hand, implicated non-waivable subject-matter jurisdiction, *see Bowles v. Russell*, 551 U.S. 205, 206–15, 127 S.Ct. 2360, ——-——, 168 L.Ed.2d 96 (2007) (holding that, because the 30–day time limit for filing a notice of appeal under Federal Rule of Appellate Procedure 4(a) was derived from a federal statutory mandate, non-compliance was a bar to the lower court's subject matter jurisdiction, which was not subject to "forfeiture or wavier to excuse [appellant's] lack of compliance"); *see also Porter v. Commonwealth*, 276 Va. 203, 229, 661 S.E.2d 415, 427 (2008) (subject matter jurisdiction cannot be waived by the parties).

8. We disagree with the dissent that *Browning–Ferris Indus. v. Residents Involved in Saving the Environment*, 254 Va. 278, 492 S.E.2d 431 (1997), *State Water Control Bd. v. Crutchfield*, 265 Va. 416, 578 S.E.2d 762 (2003), and *The Greif Companies v. Hensley*, 22 Va.App. 546, 471 S.E.2d 803 (1996), support the proposition that failure to name a necessary party in an appeal to this Court may be waived. *Browning–Ferris Indus.* involved an appeal of a decision of the Virginia Department of Environmental Quality (DEQ) to grant a permit to Browning–Ferris Industries (BFI) for the building of a solid waste management facility. After DEQ granted the permit, a group of residents living near the proposed site appealed that decision to the circuit court, naming only DEQ in the appeal. *Browning–Ferris Indus.*, 254 Va. at 281–82, 492 S.E.2d at 433. Our Supreme Court rejected DEQ's argument that the circuit court erred in denying its motion to dismiss the appeal based on the residents' failure to name BFI, a necessary party, as a party to the appeal. The Supreme Court did so, however, only upon finding that the circuit court had granted BFI "leave to intervene in the proceedings," which rendered "moot" the circuit court's denial of

 Finally, estoppel principles are not available to appellant, as the dissent contends, "to create appellate jurisdiction over an indispensable party which is not properly before the Court," as the Virginia Supreme Court held in *Asch*. *Asch*, 251 Va. at 93, 465 S.E.2d at 819.

For these reasons, we dismiss appellant's appeal of his local misdemeanor conviction.

*Dismissed.*

---

DEQ's motion. *See* Rule 3:14 (setting forth provisions for intervention of a new party in a civil proceeding in circuit court).

Like *Browning–Ferris Indus.*, *Crutchfield* involved the failure of a petitioner to name a necessary party in an appeal of a state agency decision to circuit court. There, Crutchfield, a landowner, challenged the State Water Control Board's decision to issue a permit to Hanover County allowing the discharge of treated wastewater into a river running adjacent to Crutchfield's property. *Crutchfield*, 265 Va. at 420, 578 S.E.2d at 764. When filing his petition for appeal to circuit court challenging the decision, Crutchfield failed to name the County, a necessary party, in the petition. *Id.* at 421, 578 S.E.2d at 764. The circuit court later granted Crutchfield's request for leave to amend his petition to add the County as a party. *Id.* In affirming the circuit court's allowance of the amendment, the Virginia Supreme Court held that Rule 2A:4 (governing the notice requirements for an appeal to circuit court under Virginia's Administrative Process Act) did not compel the circuit court to reject Crutchfield's request and dismiss the appeal, as the Board contended. *Id.* at 424, 578 S.E.2d at 766. Instead, under the Supreme Court's interpretation of Rule 2A:4, it was a "matter subject to the court's discretionary authority." *Id.* (citing *Browning–Ferris Indus.*, 254 Va. at 282–83, 492 S.E.2d at 433–34).

In *Hensley*, the Virginia Workers' Compensation Commission ordered St. Paul Fire and Marine Insurance Company (St.Paul) and Liberty Mutual Fire Insurance Company (Liberty Mutual), the respective carriers for the employer over the relevant time period, to share equally in the payment of compensation owed to the claimant. St. Paul appealed the commission's decision to this Court, naming only Liberty Mutual and the claimant as appellees in its notice of appeal. *Hensley*, 22 Va.App. at 548, 471 S.E.2d at 804. Before addressing the merits, we rejected Liberty Mutual's argument that the appeal should be dismissed because St. Paul failed in its notice of appeal to name the employer as an appellee and to provide the corresponding information required by Rule 5A:11(b)(notice of appeal from an order of the commission). *Id.* at 548–51, 471 S.E.2d at 804–06. Our ruling, however, was based on our determination that the employer and its counsel were, in fact, listed as appellants on St. Paul's notice of appeal, and, therefore, "[a]ll necessary parties" were before the Court as required. *Id.* at 551, 471 S.E.2d at 806.

HALEY, J., dissenting.

I respectfully dissent.

Justice Brown wrote: "Jurisdiction is the power to adjudicate a case on the merits and dispose of it as justice may require." *The Resolute*, 168 U.S. 437, 439, 18 S.Ct. 112, 113, 42 L.Ed. 533 (1897). But, "Jurisdiction is a word of many, too many, meanings." *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C.Cir.1996), *quoted with approval in Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998).

"Clarity would be facilitated if courts and litigants used the label 'jurisdictional', not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S.Ct. 906, 915, 157 L.Ed.2d 867 (2004).

I.

*FACTS*

For purposes of succinctness, I distinguish the state charges and the municipal charge, that is, the latter a violation of Virginia Beach Ordinance § 23–7.1, which is referred to in the entire record as "Case No. CR07–1533."

On July 24, 2007, the following occurred: (a) defendant entered into a written conditional plea agreement, accepted by the trial court, as to the state charges. That plea agreement, as originally drawn, also disposed of the municipal charge. But because defendant wished to be tried on the municipal charge, the recital and proposed disposition of that charge was deleted from the written plea agreement and that deletion initialed by counsel, and (b) defendant pleaded not guilty to the municipal charge (CR07–1533), testimony was taken, and the trial court found defendant guilty and sentenced defendant to 12 months in jail, suspended. No order setting forth the

**58**

trial court's decision as to the municipal charge was prepared that day.

The order memorializing the July 24, 2007 disposition of the municipal charge was subsequently prepared, and was entered on July 30, 2007. The order is styled: *"City v. Ghamesh-louy."* (Emphasis added). That order identifies the charge ("Fail to Identify to Police"), the "HEARING DATE: July 24, 2007," and the "CASE NO: CR07–1533." [9]

On July 31, 2007, defendant filed his notice of appeal as to both the state charges and the municipal charge. Thus, whether one views the appealed convictions as of July 24, 2007, when the decision was rendered, or on July 30, when that decision was reduced to written order, in either event, the notice of appeal was *timely filed.*

That notice recites in part that:

> defendant hereby gives notice of his intention to appeal from a final judgment ... rendered on July 24, 2007.... [D]efendant entered.. a not guilty plea to the charge of refusing to provide identification to a police officer, a violation of Virginia Beach municipal code. The defendant was convicted of failing to provide identification to a police officer.... [10]

It includes the "Case No.... CR07–1533." The certificate attached to the notice recites that counsel for the appellee is Tom Murphy, Deputy Commonwealth's Attorney of the City of Virginia Beach and that a copy of the notice was hand-delivered to him. It is true the notice only refers to the "Commonwealth of Virginia" as appellee.

---

9. The majority notes that the written sentencing order, documenting the conditional guilty pleas of July 24, 2007 to the *state charges,* was signed by the trial judge on July 30, 2007. These state charges are not before the panel for consideration.

10. The notice further recites the sentence received on the City conviction and specifically delineates convictions that the "defendant does not appeal." An identical notice of appeal was filed, but only to correct the spelling of the defendant's name.

Defendant *timely filed* a properly formatted petition for appeal in this Court in support of his appeal of both state charges and the municipal charge. Responding, a brief was filed in this Court on December 17, 2007 by Harvey L. Bryant, the Commonwealth's Attorney of the City of Virginia Beach, and the Assistant Commonwealth's Attorney, Thomas M. Murphy, who had been trial counsel.

The appeal was sent to a judge of this Court for review. That judge denied the appeal as to the state charges and the municipal charge. Documenting that decision, this Court issued a *per curiam* order dated April 2, 2008. The style of that order refers to CR07–1533 and recites the appellees are: "Commonwealth of Virginia and City of Virginia Beach."

Defendant appealed this denial to a three-judge panel of this Court. By order entered June 10, 2008, that panel denied the petition for appeal of the state charges, but granted the petition for appeal as to the municipal charge. Again, the order documenting that decision refers to CR07–1533 and recites the appellees are: "Commonwealth of Virginia and City of Virginia Beach." With the decision of the three-judge panel, the appeal of the municipal conviction was forwarded to a merit panel of this Court for determination.

On August 6, 2008, the Attorney General filed a "Motion to Amend the Caption." That motion stated:

The remaining issue, therefore, involves only a local misdemeanor violation. Ordinarily, this office would not defend an appeal in such a case since the Commonwealth is not a proper party. Code § 2.2–511. Since, however, upon an appeal to the Supreme Court the appellant could again challenge his conviction under the state statute, this office believes it should remain involved at this stage. The proper party appellee is now the City of Virginia Beach and the Commonwealth's Attorney from that jurisdiction has agreed to become co-counsel in this matter.

WHEREFORE, the Commonwealth requests that the caption of this case be amended to add the City of Virginia Beach as an appellee.

On August 21, 2008, the Clerk of our Court, by letter, advised the Attorney General, with copy to defendant's counsel, as follows:

The Court of Appeals has received the motion to amend the caption of the above-noted case to include the City of Virginia Beach as an appellee. However, upon review of the caption of this case and the orders entered therein, the City of Virginia Beach is listed as an appellee. Accordingly, the Court will not take any action on your request.

On August 12, 2008, the Attorney General filed his printed brief for consideration by the panel. In accordance with the representations contained in his August 6, 2008 motion to amend the caption, that brief is signed by the Attorney General and by "co-counsel in the matter," the Commonwealth's Attorney of Virginia Beach. The brief concludes: "Respectfully submitted, COMMONWEALTH OF VIRGINIA and CITY OF VIRGINIA BEACH, Appellees herein."

On September 26, 2008, one month and twenty days after filing the motion to amend the caption, the Attorney General filed a motion, based upon the provisions of Rule 5A:6(d)(1), to dismiss defendant's appeal "for the failure of the appellant to join an indispensable party ... the appellant listed only the Commonwealth of Virginia as the appellee ... [and] ... [h]ere the City of Virginia Beach is ... an indispensable party." No such argument had been included in the printed brief filed by the Attorney General and the City of Virginia Beach. Notably, the Commonwealth's Attorney of Virginia Beach did not join in the motion.

This panel caused to be entered an order requesting defendant reply to the motion to dismiss. On November 3, 2008, he did so. He argued *inter alia* that: (1) he relied upon the August 21, 2008 letter from the Clerk, noting the City was a named appellee; (2) when the Commonwealth's Attorney filed a brief responding to his appeal, i.e. the initial brief filed for consideration by the one-judge review, and the three-judge writ panel, that constituted a general appearance and a waiver of any Rule 5A:6 omission; (3) that the joinder of the Com-

monwealth's Attorney with the Attorney General in the print-
ed brief prepared for consideration by the merit panel likewise
constituted a general appearance by the City; and (4) at no
point in time, prior to the filing of the Attorney General's
motion to dismiss, had the question of a Rule 5A:6 omission
ever been raised.

## II.

## *ANALYSIS*

### A) Jurisdiction

To provide clarity and guidance in matters of jurisdiction, in
*Porter v. Commonwealth,* 276 Va. 203, 228–29, 661 S.E.2d 415,
426–27 (2008), our Supreme Court quoted from *Morrison v.
Bestler,* 239 Va. 166, 169, 387 S.E.2d 753, 755 (1990):

"A court may lack the requisite 'jurisdiction' to proceed to
an adjudication on the merits for a variety of reasons."

"The term jurisdiction embraces several concepts including
subject matter jurisdiction, which is the authority granted
through constitution or statute to adjudicate a class of cases
or controversies; *territorial jurisdiction, that is, authority
over persons,* things, or occurrences located in a defined
geographic area; notice jurisdiction, or effective notice to a
party or if the proceeding is *in rem* seizure of a *res;* and
'the other conditions of fact must exist which are demanded
by the unwritten or statute law as the prerequisites of the
authority of the court to proceed to judgment or decree.'
*Farant Inv. Corp. v. Francis,* 138 Va. 417, 427–28, 122 S.E.
141, 144 (1924)...."

The *Porter* Court continued:

Our recitation in *Morrison* reflects the long-standing dis-
tinction between subject matter jurisdiction, which cannot
be granted or waived by the parties and the lack of which
renders an act of the court void, and *territorial jurisdiction*
or venue. *The latter goes to the authority of the court to act*

*in particular circumstances or places and is waived if not properly and timely raised.*

276 Va. at 229, 661 S.E.2d at 427 (emphasis added).

In *Watkins v. Fairfax County Dep't of Family Servs.*, 42 Va.App. 760, 774 n. 12, 595 S.E.2d 19, 26 n. 12 (2004), this Court noted the following distinction:

> In *David Allen Moore v. Commonwealth*, 259 Va. 431, 527 S.E.2d 406 (2000), *overruled in part by, Nelson v. Warden of the Keen Mt. Corr. Ctr.*, 262 Va. 276, 552 S.E.2d 73 (2001), the Supreme Court of Virginia explained the significant distinction between a court's "subject matter jurisdiction" and its ability to "exercise" that jurisdiction. 259 Va. at 437, 527 S.E.2d at 409 ("emphasizing the necessary distinction to be drawn ... between the power of the court to adjudicate a specified class of cases, commonly known as 'subject matter jurisdiction' and the authority of a court to exercise that power in a particular case"). Nevertheless, the term "jurisdiction" has been loosely used by the Commonwealth's appellate courts to encompass under one "short-hand" term, the concept of subject matter jurisdiction and the legally distinct but related concept at issue here, the ability of a court to exercise its jurisdiction.

There can be no question but that this Court has subject matter jurisdiction over this case. The Court of Appeals has subject matter jurisdiction for appeals of the following class of cases or controversies: "any final conviction in a circuit court of a traffic infraction or a crime...." Code § 17.1–406(A)(i). In its motion to dismiss, the Attorney General does not argue that this Court lacks subject matter jurisdiction.

That being said, the majority relies upon our recent decision in *Woody v. Commonwealth*, 53 Va.App. 188, 670 S.E.2d 39 (2008), for the propositions that: (1) the City of Virginia Beach is an indispensable party; (2) the City was not named as an appellee in defendant's notice of appeal, as required by Rule 5A:6(d)(1); and (3) "[T]he failure to join an indispensable

party is a *jurisdictional* defect that requires dismissal of the appeal." (Emphasis added).[11]

I agree with the first two propositions, but not the third.

Properly understood, there are two issues before us: First, is the failure to name an appellee in a notice of appeal of such jurisdictional import as to render that failure incapable of being waived, and thus requiring dismissal? Second, if that failure is capable of being waived, was it waived under the facts of the present case?

### Can Failure to Name a Necessary Party in a Notice of Appeal be Waived?

I agree with the majority that, absent waiver by the indispensable party, the failure of the appellant to name a necessary and indispensable party generally requires dismissal of the appeal. Nor do I dispute that the City was a necessary party to the defendant's appeal. This view has the endorsement of several prior decisions. *See e.g. Asch v. Friends of the Community of Mount Vernon Yacht Club,* 251 Va. 89, 91, 465 S.E.2d 817, 818–19 (1996); *Roberson v. City of Virginia Beach,* 53 Va.App. 666, 671, 674 S.E.2d 569, 571 (2009); *Woody,* 53 Va.App. at 197, 670 S.E.2d at 44; *Watkins,* 42 Va.App. at 765, 595 S.E.2d at 21–22; *Zion Church Designers v. McDonald,* 18 Va.App. 580, 583, 445 S.E.2d 704, 706 (1994).

---

**11.** The majority further relies upon *Bowles v. Russell,* 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007). I do not follow this reliance. *Bowles* dealt with the *untimely* filing of a notice of appeal, not with the contents of that notice. I concede that, under Virginia jurisprudence, *a failure to timely file a notice of appeal* is of such jurisdictional import as to deprive our courts of "jurisdiction" and is a failure that cannot be waived.

In the instant case, there is no question that a notice of appeal was *timely filed as to the municipal charge,* designating by ordinance that charge, its procedural history including the plea to the same, the finding of the trial court, the sentence imposed and, lastly, the specific case number. "Neither the Rules nor prior case decisions mandate dismissal of an appeal when an error of reference and not timely filing is at issue." *Carlton v. Paxton,* 14 Va.App. 105, 109–10, 415 S.E.2d 600, 602 (1992).

However, our opinion in *Woody* takes pains to emphasize that the indispensable party that the defendant failed to name as an appellee in his notice of appeal (Amherst County) did nothing that could possibly be construed as a waiver of the argument that the defendant's appeal should be dismissed for his failure to name the County as an appellee. "While the Attorney General has responded and appeared, he did so as the legal representative of the Commonwealth and not the County of Amherst." *Id.* at 194 n. 3, 670 S.E.2d at 42 n. 3.

> The County has not appeared as a party on any pleading filed in this Court. It has not filed a brief in opposition to Woody's opening brief. In fact, there is no evidence in the record that the County is even aware that this appeal is pending. Thus, the argument that the opposing party is fully aware of the issues is completely unsupported by the facts.

*Id.* at 199 n. 7, 670 S.E.2d at 45 n. 7. *Woody* never addresses the question of whether an appellee may waive the appellant's failure to name the appellee in his notice of appeal.

Of all the decisions cited by the majority, only a brief part of our Supreme Court's opinion in *Asch* provides any support for the majority's holding that a necessary party may not waive the appellant's failure to name the necessary party as an appellee in the appellant's notice of appeal. *Asch*, 251 Va. at 93, 465 S.E.2d at 819 ("We also find no merit in the respondents' contention that the Yacht Club is estopped from denying it is a party to this appeal. In this instance, this Court will not permit the respondents to utilize estoppel principles in an attempt to create appellate jurisdiction over an indispensable party which is not properly before the Court."). However, "[s]tare decisis cannot be properly applied without 'the need to distinguish an opinion's holding from its *dicta*.' Dicta in a prior decision generally refers to that portion of an opinion 'not essential' to the disposition of the case." *Newman v. Newman*, 42 Va.App. 557, 565, 593 S.E.2d 533, 537 (2004) (*en banc*) (quoting *United States Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 463 n. 11, 113

S.Ct. 2173, 2187 n. 11, 124 L.Ed.2d 402 (1993)). Chief Justice Marshall wrote:

It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit when the very point is involved for decision. The reason of this maxim is obvious. The question before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case outside, but their possible bearing on the very case is seldom completely investigated.

*Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821).

I believe the quotation from *Asch* relied upon by the majority is *dicta* for three reasons. First, the necessary party that the appellant in *Asch* failed to join in the appeal was the Mount Vernon Yacht Club. *Asch,* 251 Va. at 90, 465 S.E.2d at 818. Yet the text of the opinion makes no mention of what, if anything, the Yacht Club might have done to waive the appellant's failure to join the Yacht Club as an appellee. *See id.* Nothing in the opinion informs the reader whether or not the Yacht Club filed pleadings in the Supreme Court, attempted to intervene as a litigant in the appeal before the Supreme Court, or attempted to make a special appearance for the limited purpose of contesting the Supreme Court's jurisdiction over the Yacht Club. Thus, the reader cannot determine from the text whether or not the opinion's rejection of estoppel principles to create appellate jurisdiction was essential to the decision in the case. Nor can the reader answer the question: if the rejection of estoppel principles was not a part of the opinion, would the final decision have been the same? Accordingly, if one proceeds from the common sense premise that appellate courts generally try to include all relevant facts in the text of their published decisions, so that trial courts may intelligently apply the principles of those decisions to the facts of new cases, it follows from the omission of any facts relevant

to the estoppel issue that the Supreme Court's statement on that issue probably was *not* essential to its decision in *Asch*, and is therefore *dicta*.

Furthermore, the purpose of the doctrine of *stare decisis* is to foster the orderly administration of justice " 'by assuring consistent, predictable, and balanced application of legal principles.' " *Baker v. Poolservice Co.*, 272 Va. 677, 688, 636 S.E.2d 360, 367 (2006) (quoting *Selected Risks Ins. Co. v. Dean*, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987)). To extend the doctrine of *stare decisis* by assigning precedential importance to language from a prior decision having only a speculative connection to the essential disposition of that case cannot, in my view, have the tendency to promote an application of legal principles that is either predictable or consistent.

Second, the quotation from *Asch* relied upon by the majority includes no summary of the arguments of the parties, no citations to authority, and no legal reasoning. It is an unsupported assertion, and it does not have the qualities that Chief Justice Marshall attributed to the *holdings* of cases, i.e., that "[t]he question before the court is investigated with care and considered in its full extent." *Cohens*, 19 U.S. (6 Wheat.) at 399.

Third, and perhaps most importantly, relevant Supreme Court cases decided since *Asch* do not treat the case as standing for the proposition that an appellant's failure to name a necessary party as an appellee may not be waived by the necessary party. In *State Water Control Bd. v. Crutchfield*, 265 Va. 416, 420–21, 578 S.E.2d 762, 764 (2003), the Water Control Board decided to condemn privately owned land in Hanover County for the discharge of treated wastewater into the Pamunkey River, and the landowners appealed the Board's decision to the circuit court. The Board argued that the landowners did not properly perfect their appeal of the Water Control Board's decision because they named only the Board and the Department of Environmental Quality in their original petition for appeal, but failed to name Hanover County, a necessary party. *Id.* The circuit court, over the Board's

objection, permitted the landowners to amend their petition, adding Hanover County as a party. *Id.* This amendment was entered after the expiration of the 30–day time period for filing the petition for appeal pursuant to Supreme Court Rule 2A:4(a). *Id.* at 424, 578 S.E.2d at 766. Nevertheless, our Supreme Court stated that "[b]ecause the petitioners' notice of appeal and original petition for appeal were timely filed within the 30–day time periods specified in Rules 2A:2 and 2A:4, the circuit court had jurisdiction over the subject of the appeal." *Id.* at 423–24, 578 S.E.2d at 766. In rejecting the Board's jurisdictional argument, our Supreme Court not only cited *Asch;* it also appeared to rely, in the very same paragraph, on a waiver/estoppel argument:

> The County, as the entity granted the discharge permit, was a necessary party in this case. [*Browning–Ferris Ind. v. Residents Involved in Saving the Environment,* 254 Va. 278,] 282, 492 S.E.2d [431,] 433–34 [ (1997) ]; *see Asch v. Friends of the Cmty. of Mount Vernon Yacht Club,* 251 Va. 89, 90–91, 465 S.E.2d 817, 818 (1996). Thus, the circuit court could not determine the merits of the appeal and render a valid judgment in the case unless the County was added as a party. *Atkisson v. Wexford Assocs.,* 254 Va. 449, 455, 493 S.E.2d 524, 527 (1997); *Asch,* 251 Va. at 91, 465 S.E.2d at 818; *Schultz v. Schultz,* 250 Va. 121, 124, 458 S.E.2d 458, 460 (1995). *Moreover, we observe that the County did not object to being named a party in petitioners' appeal.* Accordingly, we conclude that the Court of Appeals did not err in affirming the circuit court's decision permitting the County to be added as a party in the case.

*Id.* at 424–25, 578 S.E.2d at 766 (emphasis added). *See also Browning–Ferris Ind. v. Residents Involved in Saving the Environment,* 254 Va. 278, 282–83, 492 S.E.2d 431, 434 (1997).

In *Browning–Ferris,* an environmental group appealed to a circuit court the decision of the Director of the Department of Environmental Quality to issue a landfill construction permit to Browning–Ferris Industries. *Id.* at 281, 492 S.E.2d at 433. The circuit court denied the Department's motion to dismiss the appeal for failing to name Browning–Ferris as a party in

its notice of appeal pursuant to Rule 2A. *Id.* at 281–82, 492 S.E.2d at 433. After further appeals, our Supreme Court agreed with the Department that Browning–Ferris Industries *was* a necessary party to the environmental group's appeal from the issuance of the permit because the Department's decision to issue the permit conferred rights on Browning–Ferris that could be "defeated or diminished" by the appeal to the circuit court; yet our Supreme Court's opinion in the case also states that Browning–Ferris' intervention in the appeal made the environmental group's failure to name the company in its notice of appeal a moot point. *Id.* at 282–83, 492 S.E.2d at 434. Not only did the Supreme Court decide that the necessary party's intervention mooted the appellant's failure to name the necessary party as an appellee, as in *State Water Control Bd.,* it expressly cited *Asch* in the same paragraph that contains that conclusion:

> We agree that BFI was a necessary party to the Residents' appeal from the Department's ruling, because that ruling conferred specific rights on BFI which could be defeated or diminished by the Residents' appeal. *See Asch v. Friends of the Community of the Mt. Vernon Yacht Club,* 251 Va. 89, 90–91, 465 S.E.2d 817, 818 (1996); 1 Frank E. Cooper, *State Administrative Law* 325 (1965). However, we take no action on the merits of the circuit court's denial of the motion to dismiss, because BFI's intervention in the appeal rendered the issue moot.

*Id.* at 282–83, 492 S.E.2d at 434. If the quotation from *Asch* relied upon the majority is not *dicta, State Water Control Bd.* and *Browning–Ferris* would never have relied upon by *Asch* in supporting their conclusions with waiver/estoppel arguments.

Since *Asch,* our Supreme Court has also frequently reaffirmed the general principle that, while defects in subject matter jurisdiction may never be waived, statutory and rule-based procedural prerequisites for the valid exercise of a court's subject matter jurisdiction *may* be waived by the parties. *See Porter,* 276 Va. at 228–29, 661 S.E.2d at 427 (citing *Morrison,* 239 Va. at 169–70, 387 S.E.2d at 755–56); *Board of Supervisors of Fairfax County v. Board of Zoning*

*Appeals of Fairfax County,* 271 Va. 336, 350–51, 626 S.E.2d 374, 383 (2006); *Nelson,* 262 Va. at 281–82, 552 S.E.2d at 75–76. The quotation from *Asch* relied upon by the majority would be a curious exception to this rule, since whether the appellant named a necessary party as an appellee has absolutely nothing to do with the subject matter or class of cases that this Court is authorized by statute to decide. Thus, the fact that *Porter, Bd. of Supervisors of Fairfax County,* and *Nelson* make no mention of *Asch,* and do not attempt to distinguish *Asch,* further supports my conclusion that the language is *dicta.*

As I have already mentioned, the term "jurisdictional" is frequently, and confusingly, used to describe procedural requirements that do not affect a court's subject matter jurisdiction. The fact that an appellate decision describes a requirement as "jurisdictional" often does *not* mean that the requirement cannot be waived by a litigant. *See Porter,* 276 Va. at 237, 661 S.E.2d at 431 ("Porter has waived any such jurisdictional defects and the judgment of the circuit court is therefore unaffected."). In deciding whether the violation of a rule or statute is a jurisdictional barrier to reaching the merits of the case, the majority should apply the standard discussed in *Moore v. Commonwealth,* 276 Va. 747, 668 S.E.2d 150 (2008). "In that light, we consider the criteria we articulated in *Jay [v. Commonwealth,* 275 Va. 510, 659 S.E.2d 311 (2008)]: Was Moore's failure to adhere strictly to the requirements of Rule 5A:12(c) insignificant, or was it so substantial as to preclude the Court of Appeals from addressing the merits of the case?" *Id.* at 754, 668 S.E.2d at 154.

Many Virginia precedents expressly hold that procedural requirements found in statutes or rules of court may be waived even when couched in mandatory terms. *See Porter,* 276 Va. at 236, 661 S.E.2d at 431(requirements of Code §§ 17.1–105 and 19.2–253 for order designating new judge and clerk's order transferring record to new circuit court whenever motions for change of venue are granted were waived by defendant's failure to object at trial; these statutory requirements did not affect subject matter jurisdiction); *Nelson,* 262

Va. at 285, 552 S.E.2d at 77–78 (notice to defendant's parents required by former Code § 16.1–263(A) for valid transfer of jurisdiction over defendant from juvenile court to circuit court for trial as an adult was waived by defendant's failure to object; failure to comply with statute did not affect subject matter jurisdiction). *See also Jay v. Commonwealth,* 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008) (requirement of Rule 5A:20(e) that the opening brief of the appellant must contain "[t]he principles of law, the argument, and the authorities relating to each question presented" is not jurisdictional); *M.G. v. Albemarle County Dep't of Soc. Servis.,* 41 Va.App. 170, 177, 583 S.E.2d 761, 764 (2003) ("We have never held, however, that Rule 5A:6(d)'s provisions regarding the contents of the accompanying certificate are jurisdictional. The fact that subsection (d) states the certificate 'shall include' does not compel a different result."); *Riner v. Commonwealth,* 40 Va.App. 440, 452–53, 579 S.E.2d 671, 677–78 (2003) (rejecting Commonwealth's argument that this Court has no jurisdiction to consider issues not designated by appellant as "questions presented" despite mandatory language of Rule 5A:12(c) that "only questions presented in the petition for appeal will be noticed by the Court of Appeals").

Relying on *Wellmore Coal Corp. v. Harman Mining Corp.,* 264 Va. 279, 283, 568 S.E.2d 671, 673 (2002), the majority argues that Ghameshlouy's failure to name the City as an appellee was not waivable because Ghameshlouy "did not file a notice of appeal as to the misdemeanor conviction." There are at least two problems with this argument. First, Ghameshlouy *did* file a notice of appeal as to the misdemeanor conviction. The notice of appeal he filed recites the code section and the case number corresponding to the city misdemeanor charge. His notice of appeal also mentions the sentence he received upon conviction for the city misdemeanor. Moreover, the majority's reliance on *Wellmore Coal* is misplaced. *Wellmore Coal* rejected an attempt by one of the parties to amend a notice of appeal, *after* the 30–day notice of appeal deadline, pursuant to Code § 8.01–428(B) (providing for correction of clerical errors) so that the originally filed notice of appeal

would comply with Rule 1A:4 (governing practice of foreign attorneys in Virginia). *Id.* at 282–83, 568 S.E.2d at 672–73. The holding of *Wellmore Coal* is one of statutory interpretation; noncompliance with Rule 1A:4 is not a "clerical error" within the meaning of Code § 8.01–428(B). Unlike this case, *Wellmore Coal* does *not* concern the failure to name a necessary party as an appellee in a notice of appeal, nor does it concern the question of whether or not the necessary party waived that failure. For these reasons, I believe the precedents governing this case are, not *Wellmore Coal*, but *Browning–Ferris*, and *The Greif Companies v. Hensley*, 22 Va.App. 546, 471 S.E.2d 803 (1996), both of which do concern this question.

The majority further argues that we must dismiss Ghameshlouy's appeal because there is no explicit statutory authorization for a third party, the City of Virginia Beach, to intervene in this appeal. However, the fundamental distinction between subject matter jurisdiction and all other forms of jurisdiction weighs strongly in favor of treating Ghameshlouy's failure to name the City in his notice of appeal as waivable, even in the absence of a statute or rule specifically authorizing this Court to treat such questions as waived. *See Porter,* 276 Va. at 229, 661 S.E.2d at 427 (mentioning "the long-standing distinction between subject matter jurisdiction, which cannot be granted or waived by the parties and the lack of which renders an act of the court void, and territorial jurisdiction or venue. The latter goes to the authority of the court to act in particular circumstances or places and is waived if not properly and timely raised."). Neither the majority nor any of the parties suggest that we lack jurisdiction over the subject matter of this case. Indeed, it is indisputable that we have subject matter jurisdiction over any final order of a circuit court convicting a defendant of a traffic infraction or crime, unless a sentence of death has been imposed. *See* Code § 17.1–406(A)(i). Because Ghameshlouy's failure to name the City in his notice of appeal does not implicate our subject matter jurisdiction, and because the general rule is that only subject matter jurisdiction may never be waived by the par-

ties, it is incumbent upon the majority to explain why Ghameshlouy's failure to name the City as a party cannot be waived. To observe that no rule or statute directly speaks to this question is no substitute for doing so.

Citing *Bagwell v. International Union,* 244 Va. 463, 423 S.E.2d 349, *rev'd on other grounds,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), the majority argues that we must dismiss Ghameshlouy's appeal because a third party requires the permission of the Court to intervene in litigation for the first time on appeal, and because the City has not expressly asked the Court for such permission. In *Bagwell,* our Supreme Court allowed a third party, who was not an original party to the suit in the trial court, *see id.* at 473, 423 S.E.2d at 355, to intervene for the first time on appeal. Significantly, the Court did so without citing any statute or rule authorizing such an intervention. The case came to the circuit court upon a coal company's filing of a bill of complaint against three unions, during the course of the unions' labor dispute with the company. *Id.* at 466–67, 423 S.E.2d at 351–52. The circuit court appointed a special commissioner to collect contempt fines levied upon the unions. *Id.*

> We previously have not decided whether a party may intervene in the first instance on appeal. In the present case, the Company suddenly withdrew as appellee while this appeal was pending in the Court of Appeals. Consequently, only Bagwell, as special commissioner, could have urged the Court of Appeals to uphold the validity of the subject fines. He was the logical replacement for the Company in that role. Moreover, the Union could not have been prejudiced by his intervention. Thus, under the circumstances of this case, we hold that the Court of Appeals erred in denying Bagwell's motion to intervene.

*Id.* at 474, 423 S.E.2d at 355–56. The majority cites *Bagwell* for the proposition that "[f]or a third party to be recognized as a party to a pending appeal, such party must obtain the court's approval upon the party's motion to intervene." I agree that "the court's approval" is indeed a requirement, but I doubt that this meaningfully contributes to the majority

argument that we must dismiss Ghameshlouy's appeal. After all, this Court *denied* its approval to Bagwell's attempt to intervene as a party, *International Union v. Clinchfield Coal Co.*, 12 Va.App. 123, 127, 402 S.E.2d 899, 902 (1991), and our Supreme Court held that our refusal to grant this approval was reversible error because "the Union could not have been prejudiced by this intervention." *Bagwell*, 244 Va. at 474, 423 S.E.2d at 355. Similarly, there is no evidence that the City has been prejudiced by Ghameshlouy's failure to name it as an appellee in his notice of appeal. As to the majority's suggestion that we must dismiss the appeal because the City has never filed a motion to intervene, there exists no requirement that a necessary party, who was originally a party to the suit in the trial court, must file a document styled "motion to intervene," in order to waive the failure of the appellant to name him as an appellee in the appellant's notice of appeal. On the contrary, our Supreme Court has held that when a party appears in the litigation *for any purpose other than questioning the jurisdiction of the court,* that appearance operates as a general appearance, and a waiver of any objection to the court's jurisdiction over the person/party. *Gilpin v. Joyce,* 257 Va. 579, 581–82, 515 S.E.2d 124, 125–26 (1999).[12]

### *Did Appellees Waive Ghameshlouy's Failure to Name the City of Virginia Beach As An Appellee?*

I now turn to the question as to whether or not the objection to "jurisdiction" was, in fact, waived. Initially, I note that no challenge as to the "jurisdiction" of this Court was ever raised prior to September 26, 2008, when the Attor-

---

12. I believe that this principle also refutes the majority's attempt to distinguish *Browning–Ferris*, 254 Va. 278, 492 S.E.2d 431. Because an appearance by a party for *any* purpose other than to dispute the court's jurisdiction is a general appearance, it is irrelevant that Browning–Ferris expressly petitioned to intervene in the circuit court proceedings while the City merely filed a joint brief with the Commonwealth in this Court responding to the merits of Ghameshlouy's arguments. Both actions were waivers of the argument that the Court lacked jurisdiction because the appellant neglected to name a necessary party as an appellee in his original notice of appeal.

ney General filed his motion to dismiss, and, further, that the Commonwealth's Attorney of Virginia Beach did not join in that motion.

In *Gilpin*, 257 Va. at 581–82, 515 S.E.2d at 125–26, our Supreme Court wrote:

"An appearance for any other purpose than questioning the jurisdiction of the court—'*because there was no service of process*, or the process was defective, or the action was commenced in the wrong county, or the like' is general and not special, although accompanied by the claim that the appearance is only special." *Norfolk and Ocean View Railway Co. v. Consolidated Turnpike Co.*, 111 Va. 131, 136, 68 S.E. 346, 348 (1910) (emphasis added). Joyce did not make a special appearance. Rather, by filing a grounds of defense and a counterclaim, Joyce made a general appearance in the trial court proceeding. . . . *A general appearance* "is a waiver of process, equivalent to personal service of process and *confers jurisdiction of the person on the court.*" *Nixon v. Rowland*, 192 Va. 47, 50, 63 S.E.2d 757, 759 (1951).

(Emphasis added). *See also Lyren v. Ohr*, 271 Va. 155, 158–59, 623 S.E.2d 883, 884 (2006); *Clem v. Given's Ex'r*, 106 Va. 145, 147, 55 S.E. 567, 568 (1906).

On December 17, 2007, the Commonwealth's Attorney of the City of Virginia Beach filed a reply brief for consideration by this Court. That brief was considered initially by a judge of this Court, and then by a three-judge panel of this Court. The orders entered by this Court documenting the decision of that judge, and those judges, include the City of Virginia Beach as an appellee. After the writ was granted as to the municipal charge, the Commonwealth's Attorney joined as co-counsel with the Attorney General in the printed brief submitted to the merit panel.

Accordingly, the City of Virginia Beach, by counsel, has entered a general appearance in this case and by so doing has submitted to the personal jurisdiction of this Court and waived any objection to the same. I believe this appearance relinquished any right the City might have had to have this appeal

dismissed because of Ghameshluoy's failure to join the City as a party. Our Supreme Court made a similar holding when deciding *Moore,* 276 Va. 747, 668 S.E.2d 150. *Moore* reversed a decision of the *en banc* Court of Appeals declining to address the merits of the defendant's argument because the defendant incorrectly stated the applicable legal standard in his question presented pursuant to Rule 5A:12(c). *Id.* at 752–53, 668 S.E.2d at 153. In its analysis, our Supreme Court suggested that the Commonwealth waived their ability to rely on the defendant's violation of the rule:

> The Attorney General's election to rephrase the question presented in Moore's petition for appeal, with Moore's tacit acquiescence, relinquished any reliance the Commonwealth might have made on Moore's violation of Rule 5A:12(c). The Commonwealth again adhered to that election in its petition for rehearing en banc. The effect of that election was to present the legally correct, and constitutionally dispositive, question to the Court of Appeals by agreement of the parties. That question was thereafter fully briefed, argued and decided on appeal. In those circumstances, it can hardly be said that Moore's violation of that non-jurisdictional rule was so substantial as to preclude the Court of Appeals from addressing the merits of the case. We conclude that, in the unusual circumstances of this case, the Court of Appeals erred in foreclosing Moore's right to defend the decision of the panel that had ruled in his favor, and will accordingly reverse the judgment of the Court of Appeals sitting en banc.

*Id.* at 756, 668 S.E.2d at 155. In determining that the Commonwealth had acquiesced to a decision on the merits of the issue, *Moore* emphasized the statutory preference for a decision on the merits:

> Code § 17.1–402(D) provides that the Court of Appeals sitting en banc "*shall consider and decide the case* and may overrule any previous decision by any panel or of the full court." This language indicates clear preference for the prompt and final disposition of appellate cases on the mer-

its, when that can be done without interfering with the orderly administration of justice.

*Id.* at 755, 668 S.E.2d at 154–55.

This preference for a decision on the merits is apparent in this Court's discussion of Rule 5A:11(b), applicable to appeals to this Court from the Workers' Compensation Commission. The rule requires "a notice of appeal which shall state the names and addresses of all appellants and appellees . . .," the same language employed in Rule 5A:6(d)(1).

In addressing a motion to dismiss involving Rule 5A:11(b), we wrote:

On its notice of appeal, St. Paul failed to list Greif as an appellee. However, no party to this appeal was prejudiced by that omission. Greif and its counsel were listed as appellants. All necessary parties were before the commission and are presently before this Court. This case is distinguishable from *Zion Church Designers & Builders v. McDonald,* 18 Va.App. 580, 445 S.E.2d 704 (1994), in which a necessary party received no notice of the appeal and therefore was unable to protect its interests. In this case, all necessary parties have been present and have participated at all stages of the proceedings. The motion to dismiss is denied.

*Hensley,* 22 Va.App. at 551, 471 S.E.2d at 806.[13]

In this case, the City of Virginia Beach has been present and has participated at all stages of the proceedings.

---

**13.** The majority states that our decision in *Hensley* was "based on our determination that the employer and its counsel were, in fact, listed as appellants on St. Paul's notice of appeal, and, therefore, '[a]ll necessary parties' were before the Court as required. *Id.* at 551, 471 S.E.2d at 806." However, the full paragraph to which the majority refers, quoted in full in the text above, suggests that the listing of the necessary party as an appellant was only mentioned in the opinion because it tended to establish the lack of prejudice to the necessary party. Nothing in the *Hensley* opinion supports the majority's argument that the listing of the necessary party as an appellant, but not the lack of prejudice to the necessary party or the necessary party's participation in all stages of the proceedings, was the *basis* for our decision in the case, and the contrary is apparent from the context: "On its notice of appeal, St. Paul

On August 6, 2008, after the three-judge panel granted Ghameshlouy's petition for appeal, the Commonwealth moved this Court to "Amend the Caption" of this case because "The proper party appellee is now the City of Virginia Beach and the Commonwealth's Attorney from that jurisdiction has agreed to become co-counsel in this matter." That amendment, as our Clerk advised, had been made, and was reflected in two prior orders of this Court.

On September 26, 2008, the Commonwealth, alone, filed its motion to dismiss, alleging a proper party appellee had not been named in the notice of appeal.

In *Rahnema v. Rahnema,* 47 Va.App. 645, 663, 626 S.E.2d 448, 457 (2006), we wrote: " 'No litigant can "be permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with his representations.' " *Boedeker v. Larson,* 44 Va.App. 508, 525, 605 S.E.2d 764, 772 (2004) (quoting *Asgari v. Asgari,* 33 Va.App. 393, 403, 533 S.E.2d 643, 648 (2000))" (other citations omitted). That prohibition applies to the Commonwealth as a litigant. *See Luck v. Commonwealth,* 30 Va.App. 36, 45–46, 515 S.E.2d 325, 329 (1999) ("However, to accept the Commonwealth's waiver argument on appeal would be to permit the Commonwealth to benefit from its own wrong in offering the inadmissible evidence at trial.").

More recently and specifically here applicable, the Supreme Court's opinion in *Porter,* 276 Va. at 231, 661 S.E.2d at 428, quoted with approval the following: " 'A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.' " *Cangiano v. LSH Bldg. Co.,* 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006).

Here, the Commonwealth asked this Court to name the City of Virginia Beach as an appellee and then moved this Court to

---

failed to list Greif as an appellee. However, no party to this appeal was prejudiced by that omission. Greif and its counsel were listed as appellants." *Id.*

dismiss this case because the City of Virginia Beach was not named as an appellee. The majority responds that, even if Ghameshlouy's failure to name the City as a party was waivable, this failure could be waived only by *the City*, not by the Commonwealth. However, the Commonwealth's motion to amend the caption includes the representation that the City of Virginia Beach has joined as co-counsel in the matter. Even if the motion to amend the caption did not waive the failure to join the City, the City responded to Ghameshlouy's original petition for appeal and, after that appeal was granted, the brief responding to the merits of Ghameshlouy's argument was signed and filed jointly by an Assistant Attorney General *and* by Thomas M. Murphy, Deputy Commonwealth's Attorney for the City of Virginia Beach.

I would hold any objection to the jurisdiction of this Court to hear defendant's case was waived for the following reasons: (1) The City of Virginia Beach has made a general appearance, and participated in this case at every stage of the proceedings; and (2) in light of its prior motion to amend the caption, any consideration of the former is barred from consideration by the doctrine prohibiting a litigant from approbating and reprobating.

### B) Merits of Ghameshlouy's Argument on Appeal

Because I disagree with the majority's decision to dismiss Ghameshlouy's appeal, I would address the merits of Ghameshlouy's argument that the trial court erred in convicting him of violating Virginia Beach Municipal Code § 23–7.1.

### Facts

The facts of this case are undisputed.

In the early morning hours of February 24, 2007, Carl Wilson was working as a security officer at an Econo Lodge in Virginia Beach. Wilson heard an argument coming from a room and perceived the sounds of a person hitting the floor in the room. A male voice seemed to yell at someone not to touch him. Wilson decided to investigate, so he knocked on the door. Ghameshlouy opened it and assumed an aggressive

posture towards Wilson. Wilson then left the area of the room. He called the police and asked them to assist in evicting the room's occupants. Wilson had already dealt with another incident involving a complaint of loud noise from the room earlier that night.

Police officers, Karl Harvey and W.A. Frederick, responded. They went to the room in question and knocked on the door. A male voice asked who was there, and the officers replied they were policemen. After a brief pause, a young female opened the door. The officers advised her they had a report of disruptive behavior and inquired if anyone else was in the room. The woman stated her boyfriend (Ghameshlouy) was there.

Entering the room, the officers began to ask the woman and Ghameshlouy basic questions about their identities. When asked about age, Ghameshlouy initially indicated he was twenty. Yet when told he was too young to possess beer bottles in the room, he stated he was twenty-one. Asked for clarification, Ghameshlouy replied he would be twenty-one later that year. He soon changed his story again by giving a birth month different from the one he previously provided. The police decided Ghameshlouy's suspicious conduct required further investigation, so they temporarily detained him. A frisk uncovered two identity cards showing him to be twenty-four years old. Officer Frederick then arrested Ghameshlouy for providing false information to a police officer and charged him by warrant.

Ghameshlouy received a bench trial on July 24, 2007, during which he and the Commonwealth stipulated to the above-stated facts. Ghameshlouy defended against the charge by arguing the hotel room where the police encountered him did not represent a "public place or place open to the public" within the meaning of Virginia Beach Municipal Code § 23–7.1. The Commonwealth conceded the room was not a "public place," but maintained it was "open to the public." After hearing argument from both sides, the circuit court deter-

mined the room was open to the public and, accordingly, found Ghameshlouy guilty.

*Analysis*

Under settled law, "we will consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party below." *Dowden v. Commonwealth,* 260 Va. 459, 461, 536 S.E.2d 437, 438 (2000). This requires us to " 'discard the evidence of the accused in conflict with that of the Commonwealth.' " *Parks v. Commonwealth,* 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting *Wright v. Commonwealth,* 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954)). In considering the sufficiency of the evidence, we ask only " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Maxwell v. Commonwealth,* 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). This Court "will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." *Bolden v. Commonwealth,* 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).

Where the Court engages in statutory interpretation, it looks first to the plain language of the statute. *Williams v. Commonwealth,* 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003). If the statute contains unambiguous terms, the Court must follow that language. *Miles v. Commonwealth,* 272 Va. 302, 307, 634 S.E.2d 330, 333 (2006). Interpretation of a statute involves "reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." *Esteban v. Commonwealth,* 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003). "An undefined term must be 'given its ordinary meaning, given the context in which it is used.' " *Sansom v. Bd. of Supervisors,* 257 Va. 589, 594–95, 514 S.E.2d 345, 349 (1999) (quoting *Dep't of Taxation v. Orange–Madison Coop. Farm Serv.,* 220 Va. 655, 658, 261 S.E.2d 532, 533–34

(1980)). We strictly construe penal statutes against the Commonwealth, *Jones v. Commonwealth*, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008), but "will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein," *Armstrong v. Commonwealth*, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (quoting *Ansell v. Commonwealth*, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

Virginia Beach Municipal Code § 23–7.1 states:

> It shall be unlawful and a Class 1 misdemeanor for any person at a public place or *place open to the public* to refuse to identify himself by name and address at the request of a uniformed police officer or of a properly identified police officer not in uniform, or to provide false information in response to such a request, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety requires such identification.

(Emphasis added). The question in this appeal concerns whether a privately rented hotel room represents a "place open to the public" where the police evict the tenants at the request of the hotel.[14] Whether a place is open to the public typically represents an issue for the trier of fact. *Bond v. Green*, 189 Va. 23, 32, 52 S.E.2d 169, 173 (1949). To the

---

14. We note the Commonwealth's concession that a hotel room is not a "public place" within the meaning of the ordinance represents a concession of law not binding on this Court. *Cofield v. Nuckles*, 239 Va. 186, 194, 387 S.E.2d 493, 498 (1990). However, as mentioned above, at the trial, the Commonwealth conceded and the circuit court held a hotel room did not signify a public place. The Commonwealth continues that concession in this appeal. Under these circumstances, where no party has ever contended a hotel room constitutes a public place, for this Court to rule on the issue would represent an impermissible advisory opinion. *See Martin v. Ziherl*, 269 Va. 35, 40, 607 S.E.2d 367, 369 (2005) (declaring that "the Court does not have the power to render a judgment that is only advisory"); *Commonwealth v. Harley*, 256 Va. 216, 219, 504 S.E.2d 852, 854 (1998) (stating that while "the Commonwealth invites this Court to render an advisory opinion ... [t]his is an exercise in which the Court traditionally declines to participate"). Accordingly, I only consider whether the hotel room at issue was "open to the public," which is the only dispute the parties bring to the Court's attention.

extent we engage in statutory interpretation, we give *de novo* review. *Wright v. Commonwealth,* 275 Va. 77, 80–81, 655 S.E.2d 7, 9 (2008).

As a preliminary matter, I believe it is clear that the public areas of hotels represent places open to the public. Code § 15.2–2806 speaks of "areas of hotels, motels, and other establishments open to the public for overnight accommodation." Reading Municipal Code § 23–7.1 in light of this law makes plain that public areas of hotels are places open to the public. *See King v. Commonwealth,* 2 Va.App. 708, 710, 347 S.E.2d 530, 531 (1986) (stating that "[t]he Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed"). Additionally, other courts have referred to the public areas of hotels as places open to the public. *See, e.g., Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 873 (9th Cir.2004); *City of St. Joseph v. Christgen,* 513 S.W.2d 458, 459 (Mo.1974); *Olsen v. State,* 663 N.E.2d 1194, 1196 (Ind.Ct.App.1996).

Yet hotel rooms rented to private members of society typically do not represent places open to the public. *See Jones v. Commonwealth,* 16 Va.App. 725, 727, 432 S.E.2d 517, 518 (1993); *Servis v. Commonwealth,* 6 Va.App. 507, 514, 371 S.E.2d 156, 159 (1988). These rooms give persons "a privacy interest similar to the interest they would have had in a private residence." [15] *Cherry v. Commonwealth,* 44 Va.App. 347, 361, 605 S.E.2d 297, 304 (2004).

Importantly for this case, where a hotel evicts guests due to disruptive conduct, possession of the room reverts to the hotel and the evicted guests have no right to prevent police from entering the room. *Young v. Harrison,* 284 F.3d 863, 869 (8th Cir.2002) [16]; *see also United States v. Haddad,* 558 F.2d 968,

---

**15.** It is important to remember that while these cases involved Fourth Amendment issues, the instant case concerns only the Virginia Beach ordinance.

**16.** The *Young* court stated that when a hotel guest " 'creates a disturbance, though [he] has a right under his contract to remain so long as

975 (9th Cir.1977). Hotel employees may enter the room and consent to a police search. *United States v. Parizo*, 514 F.2d 52, 54 (2d Cir.1975). As one court summarized: "When the rental period has elapsed, the guest has completely lost his right to use his room and any privacy associated with it. The manager of the motel may then freely enter the room, rent the room to others, and remove any belongings left in the room." *United States v. Croft*, 429 F.2d 884, 887 (10th Cir.1970); *see also United States v. Jackson*, 585 F.2d 653, 658 (4th Cir. 1978).

Other cases help illustrate the significance of the above law to this case. In *McCary v. Commonwealth*, 36 Va.App. 27, 38, 548 S.E.2d 239, 244 (2001), a hotel guest intentionally damaged hotel property. This Court held that given those actions, the hotel "clerk was justified in immediately terminating appellant's occupancy, thereby restoring the ability of motel staff" to enter the room. *Id.* at 39, 548 S.E.2d at 245. In *United States v. Rambo*, 789 F.2d 1289, 1291 (8th Cir.1986), a hotel received complaints of a man running naked in the hallways and screaming. The hotel called the police to have the man evicted. *Id.* at 1292. The court held that when police officers confronted the individual, his rights to the room ended and "control over the hotel room reverted to the management." *Id.* at 1295–96.

Here the hotel requested the police to evict the occupants of the room where Ghameshlouy was found because of disruptive behavior.[17] The hotel had justification for making this request since it had already dealt with disruptive behavior earlier that night. When police came to the room to evict the tenants, any

---

he acts with due regard to the rights of others, the proprietor ... or their agents, may use the amount of force necessary to expel.'" *Young*, 284 F.3d at 868 (quoting *Hutchins v. Town of Durham*, 118 N.C. 457, 471, 24 S.E. 723 (1896)).

**17.** Ghameshlouy had not registered with the hotel. Rather, the hotel had rented the room to the parents of the young woman also found in the room. Given our ensuing discussion of whether a vacant hotel room represents a place open to the public, we do not consider this matter relevant to our disposition of this appeal.

rights the occupants had to the room ended and the room reverted to hotel control.[18]

While the eviction made the room available to the public for rent, the question remains whether the vacant hotel room constituted a "place open to the public." Under these circumstances, I would hold it did not.

Virginia courts have given limited consideration to what constitutes a location open to the public, but have not provided a single definition. In *Everett v. Commonwealth*, 214 Va. 325, 327, 200 S.E.2d 564, 566 (1973), our Supreme Court easily held in a *per curiam* opinion that an act "which can be seen only by looking past drawn curtains into a private residence is not 'open.'" Later in *Smith v. Commonwealth*, 26 Va.App. 620, 626, 496 S.E.2d 117, 120 (1998), this Court held a convenience store parking lot situated across from a school represented a place open to the public. We found important that nothing showed the "location was blocked, closed, or in any way inaccessible to the public." *Id.* We also noted persons "had full access to the property ... with no interruption from the owners of the establishment." *Id.*

Also relevant here is Code § 9.1–138, which defines the "general public" as "individuals who have access to areas open to all and not restricted to any particular class of the community." Thus, an area open to the general public must provide access to anyone without restriction to discrete parts of the community. *Id.*

Like the Virginia courts, courts from other jurisdictions considering how to define a place open to the public generally agree the key feature of such a place is that any member of the public may come upon the premises without notice. Four appellate courts have found the definition contained in an Oregon statute informative. *See Steele v. Breinholt*, 747 P.2d 433, 435 (Utah Ct.App.1987); *State v. Sanchez*, 105 N.M. 619,

---

**18.** We do not suggest police may use hotel evictions to effectuate otherwise improper searches. *See Finsel v. Hartshorn*, 200 F.Supp.2d 960, 969 (C.D.Ill.2002). In the present case, there is no doubt the hotel properly sought to evict Ghameshlouy for disruptive conduct.

735 P.2d 536, 539 (1987) (Apodaca, J., specially concurring); *State v. McGinnis,* 622 S.W.2d 416, 419 (Mo.Ct.App.1981); *People v. Bozeman,* 624 P.2d 916, 918 (Colo.Ct.App.1980). That statute states: " 'Open to the public' means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required." Or.Rev.Stat. § 164.205(4) (2007). Another court distinguished private locations such as "apartments, hotel rooms, [and] enclosed toilet booths" from places where any person may enter. *People v. Rylaarsdam,* 130 Cal.App.3d Supp. 1, 181 Cal.Rptr. 723, 730 (1982). The court held that in those latter places, "the possibility of members of the public being present preserves their nature as . . . 'places open to the public.' " *Id.*

Based on the cited Virginia law and as explained by courts from other jurisdictions, I would hold that a "place open to the public" signifies a place where any member of the public may enter at will.[19]

Importantly for this case, some courts have applied this reasoning in the context of hotels. Especially persuasive is *People v. Daniels,* 8 A.D.3d 1022, 778 N.Y.S.2d 241 (2004). The defendant there challenged his conviction for stealing money from a vending machine in a hotel. *Id.* at 242. The court noted that access to the corridors and rooms of the hotel, including the area of the vending machines, required opening one of four locked doors with a room key. *Id.* Although the locks were broken at the time of the crime, signs on the doors indicated only persons with a key could enter. *Id.* Based on these facts, the court found the evidence sufficient to find the defendant "entered an area of the hotel not

19. I note that the *Smith* Court stated this phrase has a "relatively clear import of its language." *Smith,* 26 Va.App. at 625, 496 S.E.2d at 119. However, the *Smith* Court went on to examine legislative intent to determine where the statute at issue applied. *Id.* at 626, 496 S.E.2d at 119. I consider the phrase "open to the public" as applied to this case to be ambiguous and provide this definition for clarity here and in future cases.

open to the general public." *Id.* at 243. In *Cueto v. State,* 979 So.2d 1113, 1115 (Fla.Dist.Ct.App.2008), the court held the evidence sufficient to show the area behind a hotel counter was not open to the general public. Finally, hotel lobbies are known as open to the public. *Champlin v. State,* 84 Wis.2d 621, 267 N.W.2d 295, 299 (1978); *Taylor v. State,* 836 N.E.2d 1024, 1030 (Ind.Ct.App.2005).

Application of these principles to this case makes clear the hotel room where the police found Ghameshlouy was not open to the public, in spite of the fact that his eviction from the premises returned possession of the room to the hotel. Indeed, it would present an extraordinary occurrence for a vacant hotel room to be open to the public. While members of the public may rent a vacant room, they may not simply arrive and enter a room at will, for the hotel locks the rooms in anticipation of paying customers.[20] Only upon registering with the hotel does a patron receive a room key enabling him to enter a room. After that point only the patron, persons admitted by the patron, and hotel staff may enter the room. Upon leaving the hotel, the patron returns the keys to the hotel, which then resumes its status as the only permissible room entrant.

Likewise, in this case, any member of the public could not go into the hotel room at issue. Ghameshlouy and his companion restricted access to the room, as is evident from the fact that the police were asked who they were before the door opened.[21] While the police, as agents of the hotel, had the authority to evict the room occupants, this did not give the public an instant right to enter. The room occupants would

---

**20.** *Cf. McCary,* 36 Va.App. at 37, 548 S.E.2d at 244 (quoting 3 Wayne R. LaFave, *Search and Seizure* § 8.5(a), at 781 (3d ed.1996), for the notion " 'that it is commonly known that those who operate [hotels and motels] are understandably interested in maximum paying occupancy' ").

**21.** Although, as mentioned in footnote seventeen, Ghameshlouy had not registered with the hotel, he was there with the permission of the daughter of the hotel registrants. The evidence makes clear any member of the public could not have entered the room.

have to leave first, and the hotel would need to clean the room. A member of the public would then have to register with the hotel, receive a key to the room, and proceed to its location. Ghameshlouy gave false information to the police before he even departed the room. Under these circumstances the room clearly lacked openness to the public. Thus, Ghameshlouy's conduct fell outside the provisions of Virginia Beach Municipal Code § 23–7.1 and the circuit court erred in convicting him under it.

For the foregoing reasons, I would reverse Ghameshlouy's conviction and dismiss the warrant.