COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


CLARENCE EDWARD McCARY

                                              OPINION BY
v.    Record No. 2684-00-1              JUDGE LARRY G. ELDER
                                               JULY 3, 2001
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                    Randolph T. West, Judge

        Charles E. Haden for appellant.

        Thomas M. McKenna, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


    Clarence Edward McCary (appellant) appeals from his bench

trial convictions for possession of cocaine with intent to

distribute and transporting a controlled substance into

Virginia.  On appeal, he contends the trial court erroneously

(1) denied his motion to suppress items seized during a

warrantless search of his motel room, (2) attributed to him

cocaine found on the ground beneath the broken window of his

motel room, and (3) concluded the evidence was sufficient to

prove he acquired cocaine outside Virginia and transported it

into the state.

    We affirm the trial court's denial of the motion to

suppress because appellant relinquished his expectation of

privacy in the motel room when he effected extensive damage to

the room and its furnishings, rendering him potentially both civilly and criminally liable. We also hold the trial court did not commit reversible error in attributing to appellant the cocaine found outside his room. Appellant was charged with only one count of possession with intent to distribute, and the additional cocaine found on his person and in his room was sufficient both to prove a prima facie case and to support his conviction. Finally, we hold that a police officer's testimony that appellant admitted purchasing the cocaine found on his person and in his room in North Carolina before coming to Virginia was sufficient to support his conviction for transporting cocaine into the Commonwealth. Thus, we affirm appellant's convictions.

## I.

## BACKGROUND

At about 9:30 a.m. on November 2, 1999, Newport News Police Officer V.D. Williams was dispatched to the Suburban Lodge. Upon his arrival, he learned from the manager that the man occupying room 225, appellant, "was making threats" to guests and employees, was "destroying property in the room" and had "stated he was not coming out of the room unless the police came in blazing with guns." The manager reported initially that a woman also was in the room. After talking to the manager and checking the records, Officer Williams "made a determination

that [the woman] was not in the room," but he did not know with certainty that no one else was in the room.

Officer Williams went to room 225 with Officer A.L. Machesney. Williams identified himself as a police officer and asked appellant to come out and talk to him. Appellant responded, "I have two knives and I'm not coming out unless you come in with guns." Officer V.D. Williams then contacted Officer Scott Williams, a member of the department's crisis intervention team.

When Officer Scott Williams arrived, appellant was "smashing things" inside the room and said he "wanted the police officers to kill him." When appellant eventually came out of the room, allowing the door to close behind him, Officer V.D. Williams pointed his weapon at appellant, and Officer Scott Williams ordered him to the ground. Appellant was "highly agitated" and a "tad bit irrational" but complied with the officers' order to lie down.

Officer Scott Williams then frisked appellant for weapons and detected in his left front pants pocket a large bulge which felt like a powdery substance. He recovered a large clear plastic freezer bag containing a white powdery substance he suspected was cocaine. He then placed appellant under arrest and turned him over to Officer Machesney, who took appellant to his police car.

About a minute later, based on the complaint that appellant had damaged the room and the officers' uncertainty about whether anyone else was in the room, Officers V.D. Williams and Scott Williams opened the door and entered to conduct a visual inspection. The manager accompanied them. They discovered the room "in shambles." The rear window had been smashed and cabinets, glasses and a mirror destroyed, and there were holes in the dry wall. Upon entering, Scott Williams observed in plain view between the bedroom and bathroom areas a second clear plastic bag containing suspected cocaine. The officers continued to look through the glass in the bedroom, and five to ten minutes later, they found between the bed and the window that had been broken out a third clear plastic bag of suspected cocaine. Outside, on the ground beneath the broken window of appellant's second-floor room, Officer V.D. Williams found a fourth bag of suspected cocaine. Next to it were a white cabinet door that was "very similar" to one missing from the kitchen cabinet in appellant's room and a steak knife.

While appellant was still at the scene in Officer Machesney's custody, Vice Detective J.M. Wilson arrived, identified himself to appellant, and confirmed that appellant had been advised of his rights. Wilson said appellant appeared "as if he had been using [cocaine but was] coming down from the high." He described appellant as "very coherent" and said "[h]e wasn't antsy like a normal person stoned on cocaine would be."

Wilson questioned appellant about the cocaine found on appellant's person and in his room.  Appellant originally claimed the cocaine was for his personal use but later admitted he was "bringing it to a guy in New York" and had obtained it in Raleigh, North Carolina.

Detective Wilson qualified as an expert and testified that the four bags of cocaine seized--which contained 81.15 grams, 125.61 grams, 124.58 grams, and 75.65 grams, respectively, for a total of almost 407 grams or about fifteen ounces--had a street value of about $40,700 and that possession of that quantity of cocaine was inconsistent with possession for personal use.

Appellant moved to suppress prior to trial, contending the warrantless search of his motel room was unreasonable.[1]  The trial court denied the motion without explanation.  At trial, when appellant moved to strike the Commonwealth's evidence and renewed his motion to suppress, the trial court noted it had already ruled on the motion to suppress and observed, "you have the management of a hotel calling for somebody to be removed and the activities of the defendant in this case that have been described to the Court, I think he gave up any expectations of privacy whatsoever in this hotel room."

During the trial testimony of Officer Scott Williams, the officer who collected the drugs at the scene, the Commonwealth

---

[1] Appellant also contended that the search of his person was unreasonable, but he does not challenge this search on appeal.

offered into evidence the certificate of analysis for the four

bags of cocaine, including the bag found on the ground beneath

the broken window of appellant's second-floor motel room.

Appellant's counsel stipulated to the chain of custody of the

cocaine and posed no contemporaneous objection to the admission

of the certificate.  None of the bags of cocaine was offered

into evidence.  At the close of the Commonwealth's evidence,

appellant's counsel "object[ed] to this Item No. 4, the bag [of

cocaine] found outside the hotel.  There's no indication that it

came from the room . . . .  We would ask that that certainly not

be allowed in . . . ."  The trial court said

> I don't think it makes any difference one
> way or the other in this case whether the
> Court excludes Item 4 or not.  There's no
> reason to exclude Item 4.  You've got a
> cabinet door right through the window, below
> there, with a bag of cocaine that is similar
> in nature from the standpoint of packaging
> and I just have no problem with it at
> all. . . .  I don't see any reason to
> exclude it.

Appellant testified in his own behalf, denying that the

officers found any cocaine on his person and denying that he

told Detective Wilson he obtained the cocaine in North Carolina.

He admitted that he "trashed the room" because he was "upset

about something," but he denied being "stoned" and "plead[ed]

the Fifth" as to "all four . . . bags of cocaine."

At the close of all the evidence, appellant renewed his

motion to strike and pointed out that the drugs he was accused

of possessing were never admitted into evidence. The Commonwealth observed that the certificate of analysis had been admitted, and appellant made no further comment on that issue. The trial court said, "I have no problem with it," and convicted appellant of both charges.

## II.

## ANALYSIS

## A.

## SEARCH OF MOTEL ROOM

At a hearing on a defendant's motion to suppress, "the trial court, acting as fact finder, must evaluate the credibility of the witnesses . . . [and] resolve the conflicts in their testimony . . . ." Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975). On appeal of the denial of such a motion, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth. Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 723 (1992).

Whether an individual maintains a legitimate expectation of privacy in a particular premises to be searched

> involves a two-part inquiry. First, we must determine whether the individual has manifested "a subjective expectation of privacy" in the object of the challenged search. This inquiry is a factual determination to which we must give deference on appeal. Second, we must determine whether the expectation of privacy is objectively reasonable, one that society is willing to recognize as legitimate. This

is a legal determination, requiring no
deference on review.

Johnson v. Commonwealth, 26 Va. App. 674, 683-84, 496 S.E.2d

143, 148 (1998) (quoting Wellford v. Commonwealth, 227 Va. 297,

301, 315 S.E.2d 235, 237 (1984)) (citations omitted).  In

determining whether an expectation of privacy is objectively

reasonable, a court looks to the totality of the circumstances,

"includ[ing] whether the defendant has a
possessory interest in . . . the place
searched, whether he has the right to
exclude others from that place, whether he
has exhibited a subjective expectation that
it would remain free from governmental
invasion, whether he took normal precautions
to maintain his privacy and whether he was
legitimately on the premises."

McCoy v. Commonwealth, 2 Va. App. 309, 312, 343 S.E.2d 383, 385

(1986) (quoting United States v. Haydel, 649 F.2d 1152, 1155

(5th Cir. 1981)).

Ordinarily under this test, "[t]he [F]ourth [A]mendment

rights of a guest in a motel room are equivalent to those of the

rightful occupant of a house," the warrantless entry of which is

presumed unreasonable.  Servis v. Commonwealth, 6 Va. App. 507,

514, 371 S.E.2d 156, 159 (1988).  Under ordinary circumstances,

the motel room's occupant has a subjective expectation of

privacy that society is prepared to recognize as reasonable,

see, e.g., Jones v. Commonwealth, 16 Va. App. 725, 727, 432

S.E.2d 517, 518 (1993), and a motel clerk or owner may not

provide valid consent for the search of a guest's room, see

*Stoner v. California*, 376 U.S. 483, 487-89, 84 S. Ct. 889, 892-93, 11 L. Ed. 2d 856 (1964). *But see Jones*, 16 Va. App. at 728-29, 432 S.E.2d at 519-20 (noting that motel staff may consent to search of *vacant* room and that staff member's apparent authority to consent may be sufficient if officer "could reasonably have believed that the room was vacant such that the maid had [actual] authority to consent to the search").

As the United States Supreme Court has recognized, however, a motel guest may relinquish his expectation of privacy and waive his constitutional right "by word or deed, either directly or through an agent." *Stoner*, 376 U.S. at 489, 84 S. Ct. at 893. Thus, many jurisdictions hold that a hotel or motel guest who stays beyond the rental period waives, "by . . . deed," his Fourth Amendment rights and loses his expectation of privacy in the room and its contents. *See, e.g., United States v. Cowan*, 396 F.2d 83, 86-87 (2d Cir. 1968) (citing state statute granting hotel a lien on guest's possessions and allowing their sale for payment of the room rental fee); *see also* Code § 43-31 (providing innkeeper with lien on baggage and other property of guest who fails to pay "proper charges due . . . for . . . board and lodging"). "[T]his . . . rather strict rule . . . finds its justification in the fact that it is commonly known that those who operate [hotels and motels] are understandably interested in maximum paying occupancy and thus could be expected promptly to clear the room of a guest who has overstayed so that another

guest may be given the room."  3 Wayne R. LaFave, Search and Seizure § 8.5(a), at 781 (3d ed. 1996); id. at 782-83 (noting prevailing view that "[t]he risk that one assumes in this connection when renting a hotel or motel room on a temporary basis is substantially greater than the risk assumed when renting residential quarters [such as an apartment] on a more permanent basis" (footnote omitted)).

We hold this same rule applies in the case of a motel guest who behaves in a manner wholly inconsistent with the proprietor's financial and ownership interests, as occurred here when appellant effected extensive damage to the premises.  See People v. Rightnour, 52 Cal. Rptr. 654, 657-59 (Cal. Dist. Ct. App. 1966) (holding that maid's discovery of burned bedding and other damaged property in occupied motel room gave manager actual authority to allow police to enter to investigate possible offenses against motel property where evidence established basis for entry was not pre-textual).  Under Virginia law, appellant was civilly liable to the motel for all property damage to the room and its contents resulting from his intentional or negligent acts, see Code § 8.01-42.2, and he may have been criminally responsible, as well, see Code § 18.2-137 (proscribing unlawful or intentional damaging of another's real or personal property as a misdemeanor or felony depending on the amount of damage and the perpetrator's intent).

The evidence, viewed in the light most favorable to the Commonwealth, established that the officers originally were called to the scene because appellant was "destroying property in the room" and that the officers themselves heard appellant "smashing things." Appellant claimed to have knives in his possession and indicated he wanted the officers to kill him. Thereafter, appellant exited the room, and the officers effected a lawful arrest of appellant.

Based on the report that appellant was "destroying property in the room" and the officers' own observations that appellant was "smashing things," we hold, as a matter of law, that appellant no longer maintained an objectively reasonable expectation of privacy in the room. Under Code § 8.01-42.2, appellant was civilly liable to the motel for the property damage he caused during his occupancy, and we hold the motel staff was entitled to enter to assess and repair that damage so that it could re-let the room as soon as possible. Thus, the motel clerk regained authority to consent to the officers' entering the room at least for the limited purpose of helping the clerk inspect the probable damage, and appellant lacked standing to object to such an inspection.

We do not hold the mere fact that appellant may have been engaged in illegal activity on the premises was sufficient, standing alone, to negate his reasonable expectation of privacy vis-a-vis the law enforcement officers. See Elliotte v.

Commonwealth, 7 Va. App. 234, 238, 372 S.E.2d 416, 418 (1988)
("[T]hat a person is engaged in criminal conduct within his home
does not, standing alone, destroy a homeowner's expectation of
privacy.").  Here, however, the motel's staff initiated contact
with the police and did so based on illegal activity on their
premises which posed an immediate danger to motel staff, guests
and property, including appellant's threats to employees and
guests and appellant's audible destruction of property not his
own.  When the officers arrived on the scene, they heard
appellant making threats and "smashing things" inside the room,
and they placed appellant under arrest when he emerged from the
room.  Under these circumstances, which included the fact that
appellant's actions rendered him potentially both civilly and
criminally liable to the motel and provided probable cause for
his arrest and the fact that appellant was, in fact, placed
under custodial arrest and removed from the scene--the motel
clerk was justified in immediately terminating appellant's
occupancy, thereby restoring the ability of motel staff to
consent to the officers' entry.

The officers, while legitimately in the room, saw two bags
of cocaine which they were justified in seizing under the plain
view exception to the warrant requirement.[2]  See, e.g., Arnold v.

_____

[2] We need not consider whether appellant retained an
expectation of privacy in personal items, such as closed
suitcases or other containers, which might have been in the
room.  The evidence establishes that the officers discovered the

Commonwealth, 17 Va. App. 313, 317-18, 437 S.E.2d 235, 238

(1993).  Thus, we hold that the trial court did not err in

denying appellant's motion to suppress.

B.

FOURTH BAG OF COCAINE

Appellant contends the trial court erred in attributing to

him the bag of cocaine found on the ground beneath the broken

window of his second-floor motel room (the fourth bag) in that

it erroneously denied his motion to strike the cocaine charge

"at least insofar as it pertained to [the fourth bag of

cocaine]."  We disagree.

First, appellant failed to preserve for appeal any

objection to the admission into evidence of the certificate of

analysis for the fourth bag of cocaine.  The Commonwealth

offered into evidence testimony concerning the discovery of the

bag and the certificate of analysis of the bag's contents

without objection from appellant.  Appellant first registered an

objection to that testimony in his motion to strike at the close

of the Commonwealth's evidence.  However, a motion to strike

properly challenges only the sufficiency of the evidence offered

up to that point, not the underlying admissibility of the

evidence.  Thus, to the extent appellant's assignment of error

---

first bag of cocaine in plain view and the second bag either in
plain view or obscured only by broken furniture belonging to the
motel.

related to the admission of the certificate, our review is barred.  See, e.g., Poole v. Commonwealth, 211 Va. 258, 259-60, 176 S.E.2d 821, 822-23 (1970).

Second, the trial court did not err in denying appellant's motion to strike the charge of possession of cocaine with intent to distribute.  Appellant was charged with only one count of possession with intent to distribute.  Thus, even if the court had agreed that the cocaine found outside the apartment could not properly be attributed to appellant, the Commonwealth's evidence was sufficient to prove a prima facie case of possession of cocaine with intent to distribute based on the remaining three bags of cocaine totaling 331 grams.[3]

---

[3] Appellant does not challenge the sufficiency of the evidence to prove his possession of all the cocaine was with the requisite intent to distribute.  Even if appellant had properly objected to the admission of evidence regarding the fourth bag of cocaine and we were to hold that the trial court erroneously admitted such evidence, its erroneous admission would amount to harmless error.

An error may be harmless where other evidence of guilt is "so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict."  Hooker v. Commonwealth, 14 Va. App. 454, 458 n.2, 418 S.E.2d 343, 345 n.2 (1992).  An error may also be harmless where erroneously admitted evidence is merely cumulative of other, properly admitted evidence.  Freeman v. Commonwealth, 223 Va. 301, 316, 288 S.E.2d 461, 469 (1982).  See generally Clay v. Commonwealth, ___ Va. ___, ___ S.E.2d ___ (2001) (adopting federal standard for determining whether non-constitutional error is harmless).

Here, even without evidence of the challenged fourth bag of cocaine, the remaining 331 grams of cocaine attributed to appellant had a street value of approximately $33,000, which was still more than sufficient to support the conclusion that appellant's possession was with the requisite intent, and appellant admitted to Detective Wilson that he was taking the

C.

SUFFICIENCY OF EVIDENCE TO PROVE TRANSPORTATION OFFENSE

Appellant contends the evidence was insufficient to prove he acquired the cocaine outside Virginia and transported it into the state, as required to support his conviction for violating Code § 18.2-248.01.  Again, we disagree.

When considering the sufficiency of the evidence on appeal in a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to its evidence all reasonable inferences fairly deducible therefrom.  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  The conclusions of the fact finder on issues of witness credibility may only be disturbed on appeal if we find that the witness' testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."  Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984).  Thus, the testimony of a single witness, if found credible by the trial court and not found inherently incredible by this Court, is sufficient to support a conviction.

Here, Detective Wilson testified that appellant admitted bringing the cocaine into Virginia from North Carolina.  As appellant admits on brief, "it was one man's word against another's."  The trial court, as the finder of fact, believed

---

cocaine to "a guy in New York."  Thus, the error, if any, could not have affected the verdict.

Wilson's testimony and rejected appellant's testimony that he had never been to North Carolina, did not buy the drugs there, and never told Detective Wilson that he did.  Thus, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to prove appellant's guilt of the challenged offense beyond a reasonable doubt.

                              III.

    For these reasons, we hold that (1) the trial court's denial of the motion to suppress was not erroneous; (2) the trial court did not commit reversible error in attributing to appellant the cocaine found outside his room; and (3) the evidence was sufficient to support his conviction for transporting cocaine into the Commonwealth.  Thus, we affirm appellant's convictions.

                                              Affirmed.