COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Alston and Russell
Argued at Alexandria, Virginia

UNPUBLISHED

JOSE DE LEON GARCIA

v.        Record No. 0400-17-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE WESLEY G. RUSSELL, JR.
FEBRUARY 6, 2018

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace Burke Carroll, Judge[1]

Shawn A. Stout (The Irving Law Firm, on brief), for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Jose de Leon Garcia ("appellant") was convicted by a jury for assault on a law enforcement

officer in violation of Code § 18.2-57.  On appeal, he argues the trial court erred in admitting

hearsay testimony when considering and ultimately denying his motion to suppress.  We affirm.

BACKGROUND

A.  Underlying Facts

Under settled principles, we address the legal issues arising from a suppression motion "only

after the relevant historical facts have been established."  Logan v. Commonwealth, 47 Va. App.

168, 171, 622 S.E.2d 771, 772 (2005) (*en banc*).  On appeal, we are "bound by the trial court's

findings of historical fact unless 'plainly wrong' or without evidence to support them and we give

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The final conviction and sentencing order, dated February 21, 2017, was entered by
Judge Carroll; however, the October 30, 2016 order denying appellant's motion to suppress was
entered by Judge Bruce White.

due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). We "consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial." Malbrough v. Commonwealth, 275 Va. 163, 168, 655 S.E.2d 1, 3 (2008). Further, when addressing suppression issues, "an appellate court reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial." Commonwealth v. White, 293 Va. 411, 414, 799 S.E.2d 494, 495 (2017). The factual findings to which we defer include the trial court's assessment of the credibility of the witnesses. McCary v. Commonwealth, 36 Va. App. 27, 35, 548 S.E.2d 239, 243 (2001).

Thus viewed, the evidence establishes that on July 1, 2016, Officer Mario Felipe Colorado of the Fairfax County Police Department was called to assist other officers with translating in their response to a service call for a domestic dispute at the residence of Ruth Beltran. Colorado already was familiar with Beltran because of his work patrolling the area and based on his service as a school resource officer at her teenaged daughter's high school. Beltran's two other daughters, one an adult and the other a small child, were also at the scene. Beltran told Colorado that she had had a dispute with her husband, the appellant. Another officer on the scene informed Colorado that he previously had been called to the residence and that Beltran's husband was wanted on an outstanding capias arising from a prior domestic disturbance. Appellant was not at home when Colorado arrived, and Colorado had not had any previous interaction with appellant.

A few days later, on July 3, 2016, Colorado was on duty patrolling the area. He was driving a marked police cruiser and wearing his uniform. Colorado had nineteen years of law enforcement experience, including several as a detective. While he was driving, he saw a Hispanic man, later identified as appellant, walking with Beltran and her youngest daughter. They were about three blocks from the Beltran residence. The little girl was between the two adults, with each adult

holding one of the child's hands. Because they appeared to have been walking as a family, Colorado suspected that the man was Beltran's husband, and thus someone who was wanted, based on his being informed a few days prior, of the outstanding warrant. Colorado had never seen the man before and had not been provided a description of Beltran's husband.

Colorado noticed that the group stopped. They all made eye contact with one another, appellant whispered something to Beltran, and appellant gave her the child. Colorado came to a stop, exited his vehicle, and asked appellant if he could speak to him. Colorado testified at trial that "the manner in which they were walking . . . led me to initiate contact with him." Appellant ignored Colorado, turned around, and walked in the opposite direction, away from Beltran and the child. In Spanish, Colorado said, "police, stop"; appellant began running, and Colorado pursued him. They came upon a fence that appellant was able to jump, but Colorado was not. Colorado believed appellant lost his shoe at this point. Colorado called for backup, explaining that he was in pursuit on foot of a suspect wanted for domestic assault and Colorado provided a description, but no name, of appellant. While in pursuit, Colorado yelled for appellant to stop at least three times.

Officer Jeremy Harvey responded to the request for backup. He saw appellant running through an alley near a shopping center. Appellant was wearing clothing that matched the description Harvey had received. Harvey proceeded in his vehicle to the front of the stores, where appellant was still running. Harvey exited his vehicle to pursue appellant on foot; he chased after him, yelling "police, stop running and get on the ground." Appellant kept running, and Harvey followed, for approximately a total of 100 feet. Harvey announced himself twice. Grabbing appellant by the right arm, Harvey again announced that he was a police officer. Appellant started to resist and was making statements Harvey could not understand. Harvey was wearing his police-issued bullet proof vest at the time.

When Harvey grabbed appellant's arm, appellant pulled away from him, jerking as he resisted Harvey's attempt to restrain him. Harvey determined that it was in his best interest to get appellant on the ground. After he took appellant down to the sidewalk, Harvey applied pressure to appellant's back to control him because appellant was moving his arms and legs. Appellant was able to get one hand free to push up with. When Harvey attempted to radio for backup, appellant got back up and knocked Harvey back. Harvey fell backwards and ended up in a sitting position. When both men were standing again, Harvey tried to get closer to appellant and appellant pushed Harvey in the chest with both arms. Harvey was able to grab appellant's arm again, but appellant continued to resist and tried to pull away. Harvey pushed appellant against a wall to hold him in place and tried to strike him in the abdomen to subdue him, but could not make contact because of appellant's continued movement. Despite Harvey's repeated requests for him to stop, appellant did not. Another citizen came to Harvey's aid, but appellant was not taken to the ground successfully until other officers arrived at the scene.

Officer Jonathon Long also responded to the call for backup and eventually arrived at the location where Harvey had detained appellant. Long testified that there was an outstanding warrant for appellant on July 3, 2016. Long was the officer who had obtained the warrant from the magistrate on April 9, 2016 based on a domestic dispute at the Beltran residence. Without objection, a copy of the warrant was admitted into evidence. Long recognized appellant from the scene of the April incident, when appellant appeared but then ran away after Beltran identified him as her husband and Long was unable to catch him. On July 3, 2016, Long confirmed with dispatch that the warrant was active on that day. When Colorado arrived on the scene, he confirmed that appellant was the man he had been pursuing.

B.  Suppression Hearing

Prior to trial, on December 16, 2016, appellant filed a motion to suppress evidence.  In it, he requested the trial court "to suppress all evidence obtained by officers during the warrantless stop and arrest of [his person]."  Appellant alleged that "[p]olice chased, tackled, and beat [him] without reasonable suspicion that he had committed any crime, all in violation of the Fourth Amendment to the Constitution of the United States of America."  In his memorandum in support of his motion, appellant asserted that neither Colorado nor Harvey "had reasonable suspicion that any crime was committed and had no reason to stop [him]."  Arguing that "[a]n officer must have a reasonable articulable suspicion that a crime has been committed in order to conduct even a brief investigatory detention of a person[,]" appellant again asked that "[a]ll evidence uncovered as a result of that detention . . . be suppressed."

A hearing on the suppression motion was held on December 30, 2016.  During Colorado's testimony, the following exchange occurred:

> [COMMONWEALTH]:  And how did you learn that there was a warrant out for the Defendant's arrest?
>
> [COLORADO]:  When I assisted my colleague, I responded to his address two days prior to the contact that I had on that -- on July 3rd with him.  And the nature of the call was, is that there was a domestic dispute between he and Ms. Beltran.  While I was translating for them I was informed –
>
> [APPELLANT]:  Objection, hearsay.
>
> THE COURT:  You need to lay some foundation, who it is and that sort of thing.
>
> [COMMONWEALTH]:  Your Honor, I –
>
> THE COURT:  He's about to tell me what someone else told him. At this stage of the proceedings I have no idea any of those circumstances, who told him that or the reliability of it and whether it's hearsay.

[COMMONWEALTH]: Right, Your Honor. I think -- well, what he's about to say isn't necessarily for the truth of the matter asserted. It's for his state of mind, how he came to learn about how he had a warrant. So, I'm not necessarily offering it for the truth of the matter asserted but I am offering it for his state of mind.

[APPELLANT]: Your Honor, if it's not for the truth it's irrelevant. The Court has already allowed in that he thought there was a warrant that, yet, it's hearsay whatever of it basis for that is. We know what's in his mind. There's a warrant in his mind.

[COMMONWEALTH]: Well, in terms of establishing reasonable suspicion, how he came to learn of that is – I want to distinguish between; was this some random citizen who came up to you and said, oh, this guy might have a warrant or was this somebody reliable and you've confirmed that he did have a warrant. So, that's -- that does go to the reasonable suspicion, the reliability of the tip and so, I do believe that that is relevant to that.

At that time, the trial court concluded that the statement was offered for the truth of the matter asserted and sustained appellant's objection.[2] The Commonwealth continued, "in terms of the motion to suppress, hearsay is not – it's still admissible on a motion to suppress." The Commonwealth likened the suppression hearing to a magistrate's consideration of probable cause in issuing a warrant, stating

> that's exactly what reasonable suspicion and probable cause is based on, is hearsay. . . . [I]n most cases, unless an officer witnesses a crime which usually does not occur, they're actually responding to something, they are told what happened. I'm responding to this because of this call. I spoke with the witness, they said this. . . . And then the [c]ourt determines whether that hearsay was reliable or not reliable and then we go from there. . . . – you can't do a motion a suppress without hearsay.

Later, the Commonwealth asked Colorado, "Did you have knowledge that the defendant had a warrant out for his arrest?" When Colorado responded in the affirmative, appellant objected on foundation grounds. Appellant conceded that Colorado could respond if he had seen the warrant.

---

[2] By definition, appellant's assignment of error does not implicate the trial court's ruling that initially sustained his hearsay objection. Rather, he challenges the trial court's ultimately admitting similar testimony. Accordingly, the initial ruling is not before us.

- 6 -

Based on the trial court's response, the Commonwealth then asked, "Who told you there was a warrant out for his arrest?" Colorado answered, "Master Police Officer Paul Bennett, Fairfax County Police Department." The trial court concluded, "That's good enough for me, if another officer told him there was a warrant." Upon further questioning, Colorado reiterated, "in just speaking to [Bennett], he informed me that [appellant] had a warrant for his arrest for domestic assault." There was no objection to that statement. Colorado also noted that Bennett had told him that Bennett "had had prior dealings with Ms. Beltran and there was a warrant out for [her] husband and that it is a frequent thing between them. And that she had been non-compliant in the department serving that warrant."

Harvey also testified at the suppression hearing. He relayed his actions in receiving the dispatch regarding Colorado's pursuit of appellant, including the description he was provided; in chasing appellant; and in struggling against appellant when he resisted arrest. At the time of the pursuit, Harvey knew that Colorado "had been involved in a subject stop and the subject had run away from him[,]" but did not know the substance of the stop.

Ultimately, the trial court denied the motion to suppress. The court entered its order denying the motion to suppress on December 30, 2016. A jury later convicted appellant of assault and battery of a police officer.

On appeal, appellant contends the trial court erred when it admitted and considered hearsay in denying his motion to suppress. The Commonwealth argues that the challenged statements from the suppression hearing did not constitute hearsay. Alternatively, the Commonwealth argues that, even if the motion to suppress had been granted, there was no actual evidence that could have been suppressed.

ANALYSIS

"The doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available." Commonwealth v. Swann, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) (internal quotation marks and citations omitted). Accordingly, we do not reach the questions of whether the hearsay rule applies in suppression hearings[3] or whether there was any evidence to suppress if the trial court had granted the suppression motion. Rather, we affirm the judgment below because the challenged statement does not constitute inadmissible hearsay.

"Hearsay is a statement, other than one made by the declarant while testifying at trial, which is offered to prove the truth of the matter asserted." Clark v. Commonwealth, 14 Va. App. 1068, 1070, 421 S.E.2d 28, 30 (1992); see also Va. R. Evid. 2:801(c). Accordingly, "if the declaration is offered solely to show that it was uttered, without regard to the truth or falsity of its content, the declaration is not excluded by the hearsay rule." Bryant v. Commonwealth, 39 Va. App. 465, 473, 573 S.E.2d 332, 336 (2002) (quoting Evans-Smith v. Commonwealth, 5 Va. App. 188, 197, 361 S.E.2d 436, 441 (1987)). "Determining whether a statement is offered to prove the truth or falsity of the matter asserted requires an analysis of the purpose for which the statement is offered into evidence." Swain v. Commonwealth, 28 Va. App. 555, 559, 507 S.E.2d 116, 118 (1998). "The hearsay rule does not operate to exclude evidence of a statement, request, or message offered for the mere purpose of explaining or throwing light on the conduct of the person to whom it was made." Fuller v. Commonwealth, 201 Va. 724, 729, 113 S.E.2d 667, 670 (1960).

Here, the challenged statement, that there was an outstanding arrest warrant for appellant, was not offered for the truth of the matter asserted. Rather, it was offered to show Colorado's (and

---

[3] Under the Federal Rules of Evidence, the United States Supreme Court has held that the prohibition on hearsay testimony does not apply at suppression hearings. United States v. Matlock, 415 U.S. 164, 172-75 (1974). We have not addressed the issue under the Virginia Rules of Evidence in a published opinion. But see Barrett v. Commonwealth, No. 1741-14-2, 2015 Va. App. LEXIS 282, at *15 n.8 (Va. Ct. App. Oct. 6, 2015).

later Harvey's) state of mind regarding whether either had sufficient reason to approach, question, stop, and eventually arrest appellant. Whether there actually was such a warrant was not the issue at the suppression hearing; why the officers believed they had a sufficient basis to engage appellant was. Because the out-of-court statement regarding the existence of an outstanding warrant was offered solely for the "purpose of explaining or throwing light on the conduct" of the officers, id., the statement was not inadmissible hearsay. Accordingly, the trial court did not err by admitting and considering the statement.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.