COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, AtLee and Raphael
Argued at Williamsburg, Virginia

JAMES MICHAEL GREASON

v.     Record No. 0406-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
FEBRUARY 14, 2023

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
C. Peter Tench, Judge Designate[1]

(Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant.
Appellant submitting on brief.

Suzanne Seidel Richmond, Assistant Attorney General (Jason S.
Miyares, Attorney General; David M. Uberman, Assistant Attorney
General, on brief), for appellee.


Following a jury trial, the Circuit Court of the City of Newport News ("trial court")

convicted James Michael Greason of rape, in violation of Code § 18.2-61, and incest, in violation of

Code § 18.2-366. On appeal, Greason contends that the evidence was insufficient to support his

convictions. For the following reasons, we disagree and affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Timothy S. Fisher presided over the jury trial, while Judge Tench presided over
sentencing.

## I. BACKGROUND[2]

In the summer of 2019, M.G. was eighteen years old and living with her father, Greason, in the city of Newport News. M.G. had recently moved to Newport News from Maryland to get to know Greason, who was, for the most part, absent from her life. Greason lived in a one-bedroom apartment with his girlfriend Robin. On the evening of June 28, 2019, Greason, Robin, M.G., and Greason's friend Steven were at the apartment drinking alcohol, which Greason provided. Feeling "a little bit tipsy" and "wobbly," M.G. went inside to lie down.

Although she normally slept on the couch, M.G. went to Greason's bedroom and laid on the bed because Steven was already asleep on the couch. The room was separated from the rest of the apartment only by a curtain. M.G. fell asleep and later awoke to find Greason touching the bottom of her legs. When M.G. realized that her father was touching her, she tried to push him away, but Greason held M.G.'s hand to her head and pulled down her shorts. M.G. pulled them back up, but Greason kept trying to remove them. M.G. tried to get away from him, but Greason "would just grip on [her] hair more." M.G. reached toward Greason's desk to try to find something with which to hit him as they struggled. Eventually, Greason successfully pulled M.G.'s shorts down and penetrated her vagina with his penis. In disbelief, M.G. "froze," and remained "completely silent."

Afterwards, M.G. ran to the living room. Steven testified that M.G. "came out of the bedroom screaming, [']my daddy just raped me.[']" M.G.'s demeanor was "[c]rying and panicked." Steven decided to take M.G. to a hotel where they waited for M.G.'s mother and grandmother to pick her up. Before they left, Greason told M.G. it was "not his fault" and complained that M.G. should "never [have] been in his bed."

---

[2] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).

Forensic nurse examiner Kacey Jenkins examined M.G. the morning after the assault. M.G. was angry, disappointed, and "kind of disheveled in a way." After conducting a thorough interview with M.G., Jenkins collected physical evidence.

Newport News Police Detective Stacy Heusterberg met M.G. at the hospital. Heusterberg obtained a search warrant for Greason's DNA and executed it the same day. At trial, forensic scientist Brenden Graney testified as an expert in forensic biology. Graney compared Greason's DNA sample with the evidence recovered from M.G.'s exam. Graney concluded that Greason could not be eliminated as a contributor to sperm samples taken from M.G.'s vagina and thighs.

Greason testified that on the night of the offense he went to bed at around 7:30 or 8:00 p.m. When he went to bed, Robin and Steven were still drinking. He did not see M.G. drink. He stated that he woke up with someone "on top of [him]" and he assumed it was Robin because she was the only female who should be in his bedroom. He testified that he did not know it was M.G. despite the fact that Robin was shorter than and weighed more than M.G., and unlike M.G., who had short hair, Robin's hair was very long. When he realized the person on top of him was not Robin, Greason pushed the person off and was "kind of stunned" to discover it was M.G. He explained that when M.G. said he raped her, he responded that "there was no possible way." Greason denied wanting any sexual contact with M.G. On cross-examination, Greason also denied that his penis entered M.G.'s vagina.

The jury found Greason guilty of both offenses. He received a total sentence of 66 years in prison, with 22 years suspended. Greason appeals, arguing that the evidence of his guilt was insufficient because M.G. was an inherently incredible witness and the jury should have accepted his alternative hypothesis of innocence.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### B. *Sufficiency of the Evidence*

Code § 18.2-366(B) defines incest, in part, as "[a]ny person who engages in sexual intercourse with his daughter." Code § 18.2-61 defines rape as any person "ha[ving] sexual intercourse with a complaining witness . . . against the complaining witness's will, by force, threat or intimidation . . . or . . . through the use of the complaining witness's mental incapacity or physical helplessness." Greason does not challenge the sufficiency of the evidence to prove any specific element of these offenses; rather, he contends that M.G.'s testimony was inherently incredible as a matter of law and that the jury wrongfully rejected his claim of innocence.[3]

---

[3] Although Greason's assignment of error contends that M.G.'s testimony was inherently incredible, he offers no law or argument on that standard. Rule 5A:20(e) (An appellant's brief must contain "argument (including principles of law and authorities) relating to each assignment

It is well-settled that determining the credibility of the witnesses "is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "Where credibility issues are resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010). This Court must accept the jury's resolution on the credibility of a witness's testimony "unless, 'as a matter of law, the testimony is inherently incredible.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)). "In other words, this Court cannot say a witness' testimony is inherently incredible unless it is 'so contrary to human experience as to render it unworthy of belief.'" *Lambert*, 70 Va. App. at 759 (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)).

In this case, M.G.'s testimony, accepted as true, supported the jury's conclusion that Greason had sexual intercourse with his daughter against her will by force, threat, or intimidation. There was nothing inherently incredible about M.G.'s version of events. She described an act of sexual intercourse, accomplished through the use of force, when Greason, after having provided her with alcohol, woke M.G. up in the middle of the night, held her hand against her head, gripped her

---

of error."). "[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat [an assignment of error] as waived.'" *Parks v. Parks*, 52 Va. App. 663, 664 (2008) (quoting *Jay v. Commonwealth*, 275 Va. 510, 520 (2008)). Nevertheless, because this issue is inextricable from Greason's other argument regarding his purportedly reasonable hypothesis of innocence, we assume without deciding that the omission is not significant and is thus not waived.

by her hair, and, after a struggle, successfully pulled her shorts down and penetrated her vagina with his penis. While the Commonwealth's case largely rested upon M.G.'s testimony, there was other corroborating evidence. Specifically, the fact that Greason's sperm was found in M.G.'s vagina and on her thigh corroborated that sexual intercourse occurred. Furthermore, the fact that M.G. immediately ran from the room crying and panicked, reported the rape to Steven, and then retreated to a hotel for safety corroborated the nonconsensual nature of the intercourse. In finding Greason guilty, the jury clearly believed M.G. It is well-settled that "'[t]here can be no relief' in this Court if a witness testifies to facts 'which, if true, are sufficient' to support the conviction '[i]f the trier of the facts' bases its decision 'upon that testimony.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (second alteration in original) (quoting *Smith*, 56 Va. App. at 718-19). Moreover, "the testimony of a single witness, if found credible by the trial court and not found inherently incredible by this Court, is sufficient to support a conviction." *McCary v. Commonwealth*, 36 Va. App. 27, 41 (2001).

Although Greason acknowledges the fact that "it is ordinarily in the province of the jury to decide which evidence to believe," he argues that his testimony offered the jury a reasonable hypothesis of innocence that was not excluded by the evidence. Specifically, Greason emphasizes that there was no door separating the bedroom from the living room and that the distance from where the sexual encounter took place was only six to ten feet away from where Steven was sleeping. He also notes that although M.G. and Steven were close, she did not call out to him for help during the encounter. Additionally, Greason claims that Robin's close proximity would have reduced the likelihood that he would engage in a sexual encounter with his daughter. Greason concludes that his version of events was more believable than M.G.'s.

It is true that "[w]hen facts are equally susceptible to more than one interpretation, one of which is consistent with the innocence of the accused, the trier of fact cannot arbitrarily adopt an

inculpatory interpretation." *Case v. Commonwealth*, 63 Va. App. 14, 23 (2014) (quoting *Moody v. Commonwealth*, 28 Va. App. 702, 706 (1998)). "However, the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Id.* (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)). Moreover, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

Greason's hypothesis of innocence was not, as he contends, reasonable or believable. The scenario he describes would require the finder of fact to believe that he thought he was having sexual intercourse with Robin, his live-in girlfriend, who was heavier than M.G. and had very long hair and that he only realized it was M.G. when he reached up and felt her short hair. Moreover, although Greason adamantly denied the act of intercourse, his sperm was found inside M.G.'s vagina, significantly compromising his credibility. The fact that M.G. did not call for help or otherwise alert the other occupants does not make her testimony inherently incredible. M.G. was only eighteen years old and had been drinking heavily and was intoxicated before going to bed. On appeal, we do not decide which witnesses were truthful. Rather, we consider only "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty" of the offenses beyond a reasonable doubt. *Emerson*, 43 Va. App. at 277 (alterations in original) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

In short, M.G.'s testimony, which was corroborated by other facts contained in the record, proved beyond any reasonable doubt that Greason committed the offenses of rape and incest, and it

was reasonable for the jury to reject Greason's hypothesis of innocence and to conclude that he was lying to conceal his guilt. We find no error in the judgment of the trial court.

### III. CONCLUSION

We conclude that M.G.'s testimony was not inherently incredible, and the Commonwealth's evidence was competent and sufficient to prove the elements of each offense beyond a reasonable doubt. Thus, we affirm Greason's convictions.

*Affirmed.*