COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Ortiz and Friedman
Argued at Norfolk, Virginia

**UNPUBLISHED**

JAMAAL DENZEL BROWN

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1009-22-1                       JUDGE FRANK K. FRIEDMAN
                                                        OCTOBER 24, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Tasha D. Scott, Judge

Tiffany T. Crawford (Morris, Crawford & Currin, P.C., on brief), for
appellant.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, the trial court convicted Jamaal Denzel Brown of malicious

wounding and using a firearm in the commission of a felony.  Brown challenges the sufficiency

of the evidence to sustain his convictions.  For the following reasons, we affirm the judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  In

doing so, we discard any of Brown's conflicting evidence, and regard as true all credible evidence

favorable to the Commonwealth and all inferences that may reasonably be drawn from that

evidence.  *Gerald*, 295 Va. at 473.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

In the early morning hours of July 12, 2020, Jozzmyn Colbert (Colbert) was with Brown, with whom she was involved in a relationship. They tried to visit a bar with Colbert's twin sister, Jazzmyn Colbert (Jazzmyn), and one of Brown's friends, but could not because Brown did not have identification.[1] Colbert and Brown then went to a 7-Eleven store in her car. Jazzmyn followed in her own car.

While Brown was in the store paying for gas, Colbert encountered some male acquaintances from high school. Colbert and Jazzmyn talked to the men and exchanged hugs. One of the men flirted with Colbert. When Brown returned outside, he questioned why Colbert was talking to the men and told her that he was going to shoot them. Jazzmyn heard Brown say that he was going to "shoot the 7-Eleven up." Colbert said that she was taking Brown home. Colbert and Brown got in her car, drove a short distance around the corner, and stopped. Jazzmyn drove her vehicle to the same location.

Brown shot a gun out of the car window. Colbert and Brown argued; she said she did not like "feeling unsafe" and being in "these type[s] of situations." She said that she no longer "want[ed] to deal with him." Colbert went to Jazzmyn's car and told her that Brown was "acting crazy" and they needed to get away from him. Jazzmyn told Colbert to follow her and drove off. Colbert returned to her car.

Brown, who was upset, was standing in the doorway of the passenger side of Colbert's car with his foot partly in the car. Jazzmyn had stopped her car after moving only a short distance, and she looked down the street toward Colbert's vehicle. Before Colbert could drive away, Brown shot at her with a handgun more than once. The shots hit Colbert in both legs. From her car, Jazzmyn

---

[1] Colbert admitted that she had a few drinks of alcohol and "some molly" that night. "Molly" is another name for "ecstasy."

heard the sound of numerous gunshots, then saw Colbert speed away from Brown. Colbert testified that she "didn't want to die," so she drove off.

Colbert drove directly to a hospital emergency room. After receiving medical assistance for her injuries, Colbert was hospitalized for two days. Colbert received 38 staples in her left leg to treat her injury, and a bullet remained lodged in her leg. At the time of trial, Colbert still experienced pain in her right leg and had difficulty walking up stairs or long distances. Colbert identified Brown to the police as the person who shot her.

The police collected five cartridge casings from the scene of the shooting. All of them were fired from the same gun.

ANALYSIS

Brown challenges the sufficiency of the evidence to sustain his convictions for malicious wounding and using a firearm in the commission of a felony. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Brown contends that the Commonwealth failed to prove that he was the person who shot Colbert because there was no evidence to corroborate the testimony of Colbert and Jazzmyn. It is well established, however, that "the testimony of a single witness, if found credible by the

- 3 -

[fact finder] and not found inherently incredible by this Court, is sufficient to support a conviction." *McCary v. Commonwealth*, 36 Va. App. 27, 41 (2001).

"The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). Any "[p]otential inconsistencies in testimony are resolved by the fact finder." *Id.* at 292. Such conflicts are not revisited on appeal "unless 'the evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion.'" *Id.* (alteration in original) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 369, *aff'd*, 272 Va. 666 (2006)). The fact finder "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc).

Considering Colbert's and Jazzmyn's testimony together, notwithstanding any possible inconsistency between them, a reasonable finder of fact could conclude beyond a reasonable doubt that Brown was the person who shot Colbert. Before the shooting, Colbert was in a relationship with Brown, and they were together in the early morning hours of July 12, 2020. Brown became jealous and aggressive when he saw her interacting with male acquaintances at the 7-Eleven store. Brown and Colbert drove away together in her car alone. After proceeding a short distance to another location, Brown fired a gun out of the car. Colbert and Brown argued, and Brown began to exit the car. Before leaving, however, he fired the gun at Colbert inside the car. Jazzmyn, who had stopped a short distance away, heard the gunshots. Immediately after being shot in the legs, Colbert

sped away to the hospital. To the police, Colbert positively identified Brown as the person who shot

her. The evidence plainly was sufficient to prove that Brown was the perpetrator and that he was

guilty of malicious wounding and using a firearm in the commission of a felony.

CONCLUSION

For the foregoing reasons, the trial court did not err and we affirm the judgment.

*Affirmed.*